**Ruth KITCHEN, Plaintiff-Appellee,**

v.

**CHIPPEWA VALLEY SCHOOLS; Chippewa Valley School Board of Education; George Depillo; Thomas Scullen; and Edward Skowneski, Defendants-Appellants.**

**No. 85–1254.**

United States Court of Appeals, Sixth Circuit.

Argued Aug. 14, 1986.

Decided July 31, 1987.

Rehearing and Rehearing En Banc Denied Oct. 16, 1987.

Robert M. Vercruysse (argued), Raymond J. Carey, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendants-appellants.

Philip Green (argued), Ann Arbor, Mich., for plaintiff-appellee.

Before JONES and NELSON, Circuit Judges; and CELEBREZZE, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

The appellants in this employment discrimination case brought under 42 U.S.C. §§ 1983 and 2000e *et seq.* (1982), and the Elliott-Larsen Civil Rights Act, Mich.Comp. Laws Ann. § 37.2701(a) (West 1985), appeal from a jury verdict and court judgment entered against them. The appellee in this action brought suit in federal district court alleging that the appellants had discriminated against her with respect to compensation and promotion. She also alleged that the appellants had retaliated against her for filing a complaint with the Equal Employment Opportunity Commission ("EEOC") and this lawsuit. This appeal presents, *inter alia,* the issues of whether the district court erred in exercising pendent jurisdiction over the state claim and submitting that claim to the jury; whether the jury instructions were sufficient for the § 1983 and Elliott-Larsen claims; whether the court's judgment and the jury verdict are inconsistent; and whether the court's judgment is clearly erroneous and the jury verdict unsupported by sufficient evidence. We affirm in part and reverse and remand in part.

## I.

The district court made the following findings of fact: The appellee, Ruth Kitchen, is the high school completion coordinator for the Chippewa Valley School system ("CVS"). The high school completion program is designed to provide adult students with an opportunity to earn a high school diploma. The appellants are the Chippewa Valley Schools; the Chippewa Valley Board of Education; Dr. George DePillo, superintendent of the Chippewa Valley Schools; Dr. Thomas Scullen, assistant superintendent; and Mr. Edward Skowneski, assistant superintendent for personnel and labor management. Kitchen was first employed by CVS in September 1977 as a part-time hourly adult high school teacher in the Adult High School Completion Program ("HSCP"). The HSCP was a component of the Community Education Program, which was directed by Gerald Becker. Kitchen continued to work as a part-time hourly

teacher until August 1978, when Mr. Becker hired her to coordinate the HSCP in the district on a part-time basis. As a part-time coordinator, she had the responsibility for coordinating the budget, personnel, and curriculum matters, subject to final approval by Mr. Becker. She reported to him, and he, in turn, reported to the Assistant Superintendent of Curriculum.

In August 1979, Kitchen was made a full-time salaried employee. Following this appointment, she assumed full responsibility for the high school completion program. Her responsibilities included hiring teachers, supervising the clerical staff, developing the budget, assisting in room assignments, and supervising the building and grounds. Mr. Becker remained her immediate supervisor. Mr. Becker appears to have taken a basically passive role in the high school completion program. For the most part, Kitchen merely informed Mr. Becker as to what she was doing. The only exception was budget matters, where Mr. Becker's approval was needed for checks and other documents.

Kitchen earned $17,500 in her first year as the full-time high school completion coordinator in 1979–80. Her salary for ensuing school years was as follows:

| | |
|---|---|
| 1980–81: | $18,900 |
| 1981–82: | $19,200 |
| 1982–83: | $20,622 |
| 1983–84: | $20,622 |
| 1984–85: | $21,800 |

Kitchen requested a pay raise and discussed the raise with the appellants on several occasions. The appellants agreed that, based on her responsibilities and job performance, she was entitled to a raise. However, she was granted a raise on only one occasion. This occurred when her status was changed from that of a part-time hourly employee to a full-time salaried employee. Because her initial full-time salary was set at a level where she would have made more as an hourly employee, her salary was raised to the point where she could become a salaried employee without taking a pay cut. The increase in her

salary in other years represented cost of living increases given all employees.

In 1982, the Chippewa Valley School System was forced to institute cost saving measures. As a result, Kitchen's supervisor, Mr. Becker, was removed from his position as director of community education. Mr. Becker's salary was $40,000 at the time that his position was eliminated. Kitchen was earning approximately one-half that amount in 1982. As a result of Mr. Becker's termination, Kitchen assumed *de facto* final authority for the high school completion program for all matters, including the budget. At the same time, Carl Roth, assistant superintendent for business affairs, retired and Thomas Tadejewski was appointed business manager. Mr. Tadejewski assumed many of Mr. Roth's former job responsibilities and was given a salary increase of $8,600, from $28,500 to $37,100, which included, in part, cost of living adjustments given to all employees. At the same time, Kitchen's request for a $2,500 pay raise was denied.

Early in the 1981–82 school year, a notice of vacancy was posted for an assistant high school principal. Kitchen submitted an application for the position. Applicants were required to have a master's degree and a minimum of five years teaching experience, including two years in a regular high school setting. Kitchen did have a master's degree, but she did not have the required teaching experience. Although she was granted an interview for the position, she was not selected to fill the vacancy because she did not satisfy the minimum requirements. The candidate selected to fill the position, Donald Weichert, had a master's degree and over twenty years of teaching experience, including approximately twenty years at the high school level.

On September 7, 1982, Kitchen filed charges with the EEOC, claiming that she was being discriminated against. She commenced the instant suit on October 15, 1982. Thereafter, the appellants substantially altered her job responsibilities, reporting procedures, and relationship with other employees. Before Kitchen filed her complaint, she had reported directly to Dr. Scullen, an assistant superintendent, regarding the high school completion program. After the complaint was filed, Kitchen was directed to report first to John Savel, an assistant principal, and then later to Rose Belanca, the director of vocational education, one of the lowest ranking administrative positions within the school district. The appellants claimed that they had acted in good faith after consulting their attorneys. However, the record indicates that the appellants did not consult their attorneys until after the organizational changes were approved. Dr. Scullen also informed Kitchen that all further communications between them should be in writing. The work hours of the high school completion program were also changed to make them less flexible and later at night, thus heightening tension between Kitchen and her fellow employees. Mrs. Belanca was also informed that she could not have a pay raise until after Kitchen's lawsuit was settled.

## II.

Kitchen's complaint alleged that the appellants had violated Title VII by unfairly setting her jobs, salary range and salary level below those set for men with comparable tasks and responsibilities, thereby intentionally discriminating against her on the basis of her sex. It further alleged that the appellants had intentionally discriminated against her by failing to promote her to assistant high school principal. Kitchen sought back pay and other equitable relief for these claims under Title VII. She also alleged that the appellants had violated her fourteenth amendment right to equal protection and sought relief under 42 U.S.C. § 1983. Her equal protection claim covered her claim of unequal compensation and failure to promote. Under the § 1983 claim, Kitchen sought back pay and compensatory relief for embarassment, humiliation, sense of outrage, and loss of self esteem, as well as costs and attorney's fees.

In a supplemental complaint, Kitchen raised a federal claim of unlawful retaliation under § 704(a) of Title VII, 42 U.S.C.

§ 2000e–3(a), and a pendent state law retaliation claim under § 701(a) of the Elliott-Larsen Act. Mich.Comp.Laws Ann. § 37.-2701(a). Kitchen alleged that the appellants had intentionally retaliated against her for filing a charge of sex discrimination with the EEOC and this lawsuit. Under this complaint, Kitchen sought injunctive relief, back pay, and compensatory damages for anxiety, humiliation, and emotional distress.

Kitchen's § 1983 claim and state law retaliation claim were tried to a jury over the appellants' objections. The jury returned a verdict against the individual appellants, DePillo, Scullen, and Skowneski, finding that they had violated Kitchen's fourteenth amendment right to equal protection and had retaliated against her for bringing charges of sex discrimination against the school board. The jury did not indicate whether its finding of an equal protection violation was based on the compensation or promotion allegations. The jury determined that Scullen was liable to appellee for compensatory damages of $25,000; and that DePillo and Skowneski were each liable for $500 in compensatory damages. The award did not include damages sustained in the way of lost wages. The jury did not find the school board liable in any respect.

The Title VII claim was tried to the bench. The judge found all appellants liable, including the school board, with respect to Kitchen's compensation and retaliation claims. In its findings of fact, the court concluded that the appellant male administrators bore a discriminatory animus toward Kitchen specifically and female employees generally. The court found this reflected in the appellants' conduct and in comments made to Kitchen by certain appellants such as: "Chippewa Valley is not ready for female administrators;" "Ruth, you could have had John Lardy's full attention if you had crossed your legs;" "Now I have four of them [women] to deal with;" "No woman is going to tell Chippewa Valley how to run its programs;" and "I can't keep my hands off you Ruth, I haven't been with a woman in several days." The court also found that discriminatory animus was demonstrated by the fact that promotional and hiring requirements had, on occasion, been waived for male candidates but not for female candidates. It concluded that the appellants discriminated against Kitchen in July 1982 when she was denied a $2,500 pay raise, and that all the appellants retaliated against her by altering her reporting relationship and making other organizational changes that affected her after she filed her EEOC charge. Kitchen was awarded back pay to September 7, 1980. The total award against all appellants was $12,500. The court concluded that Kitchen had failed to establish a prima facie case with respect to her promotion claim because the male hired for the assistant principal position was more qualified than she. Appellants were therefore found not liable on the promotion claim. The appellants now appeal from the judgments entered on both the jury's verdict and the court's decision.

## III.

### A.

The appellants first claim that the district court erred when it exercised pendent jurisdiction over Kitchen's Elliott-Larsen retaliation claim. The appellants primarily argue that Congress did not intend to allow federal courts to hear pendent state claims in Title VII lawsuits if potential recovery or remedies available under state law are legal as compared to the equitable remedies available under Title VII.

The decision whether to exercise pendent jurisdiction is generally left to the discretion of the trial court. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In determining whether to exercise jurisdiction, the trial court must consider whether the federal claim is substantial, whether the federal and state claims derive from a common nucleus of operative fact, whether the claims would normally be expected to be tried together, and whether judicial economy, fairness, and convenience would all be served by hearing the state claims in the federal proceeding. *Id.* at

725, 86 S.Ct. at 1138. Pendent jurisdiction, however, may not be exercised when Congress has indicated an intention to deny it. *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). On this basis, several district courts have ruled that when federal question jurisdiction is based on Title VII, there can be no pendent jurisdiction over state claims that may give rise to legal relief and a right to a jury trial. *See, e.g., Haroldson v. Hospitality Sys., Inc.,* 596 F.Supp. 1460, 1461 (D.Colo.1984); *Frye v. Pioneer Logging Machinery, Inc.,* 555 F.Supp. 730, 732–35 (D.S.C.1983); *Bennett v. Southern Marine Mgmt.,* 531 F.Supp. 115, 117–18 (M.D.Fla.1982); *Jong-Yul Lim v. International Inst. of Metro. Detroit, Inc.,* 510 F.Supp. 722, 725 (E.D.Mich.1981); *Kiss v. Tamarac Utilities, Inc.,* 463 F.Supp. 951, 954 (S.D.Fla.1978). *Cf., Bradford v. General Tel. Co.,* 618 F.Supp. 390, 397 (W.D.Mich.1985) (court exercised its discretion and held that the "interests of justice and considerations of judicial economy and of fairness and convenience to the litigants would best be served" by exercising pendent jurisdiction over plaintiff's state law claims that were related to his Title VII claims). In reaching this conclusion, these courts have reasoned that since the relief provided by Congress under Title VII is equitable in nature, *see* 42 U.S.C. § 2000e-5(g), and specific procedural limitations are mandated by the Act, such as trial to the bench and expeditious disposition, Congress implicitly intended to deny pendent jurisdiction over state legal claims.

To date, only one appellate court has passed on this issue. In *Jones v. Intermountain Power Projects,* 794 F.2d 546 (10th Cir.1986), the Tenth Circuit held that Congress did not intend to negate the exercise of jurisdiction over non-Title VII claims when it enacted Title VII. The court noted that an examination of the statute "reveals nothing to suggest an intent to negate pendent jurisdiction." *Id.* at 552. *Cf., Bouchet v. National Urban League,* 730 F.2d 799, 805–06 & n. 2 (D.C.

Cir.1984) (holding that the concerns cited by the district courts *supra* justify discretionary denial of pendent jurisdiction but not deciding whether such denial is mandated by Congress).

■ The appellants rely on the district court cases to support their claim of error by the court below. These decisions, however, are not persuasive in this instance. The appellants' assertion that Kitchen's state law claim is pendent solely to the Title VII claim is incorrect. Kitchen's state law claim is also pendent to the § 1983 claim. Had Kitchen filed only a Title VII claim and a pendent state claim, the district court decisions discussed above may have been more persuasive. The presence of the § 1983 claim, however, presents us with a different situation. Because § 1983 permits legal relief and jury trials, the concerns apparent when Title VII is the only basis for federal jurisdiction are not present in the instant case. The requirements of *Gibbs* are satisfied with regard to the § 1983 and Elliott-Larsen claims. While it may be arguable that the § 1983 equal pay and promotion claims and the Elliott-Larsen retaliation claim do not derive from a common nucleus of operative fact because the discriminatory treatment based on sex occurred before the retaliation, the acts complained of were part of an ongoing pattern of discrimination, and the retaliation took place because Kitchen filed a complaint about the discrimination. Therefore, there is sufficient connection between the § 1983 and Elliott-Larsen claims to justify the exercise of pendent jurisdiction.[1]

## B.

The appellants also challenge the adequacy and validity of the jury instructions given for the § 1983 and Elliott-Larsen claims. Jury instructions are reviewed as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law

---

1. Because we find that the presence of the § 1983 claim justified the exercise of pendent jurisdiction, we need not decide whether pendent jurisdiction may be exercised when Title VII is the sole basis for federal question jurisdiction.

for aiding the jury in reaching its decision. *Blackwell v. Sun Elec. Corp.*, 696 F.2d 1176, 1181 (6th Cir.1983). A judgment can be reversed if the instructions, viewed as a whole, were confusing, misleading and prejudicial. *DSG Corp. v. Anderson*, 754 F.2d 678, 679 (6th Cir.1985).

■ The appellants claim that because the § 1983 claim contained both compensation and promotion issues, the court should have given separate instructions for each.[2] The appellants, however, cite no authority for this proposition, and we see no basis for reaching a conclusion that a trial court cannot address all the alleged grounds for a denial of equal protection in one instruction.

The appellants also claim that the trial court failed to instruct the jury on the shifting burden of proof requirements established by the Supreme Court in *Texas Dep't. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[3] Section 1983, like Title VII, pro-

vides relief for discriminatory employment practices of public employers. *Daniels v. Board of Educ.*, 805 F.2d 203, 207 (6th Cir.1986). Disparate treatment claims brought under either statute require proof of purposeful discrimination. *Id.* "Thus, the order and allocation of proof, applicable in a disparate treatment case under Title VII, may be utilized in adjudicating ... discrimination claims arising under sectio[n] ... 1983." *Id.*

■ Since the shifting evidentiary burdens set out in the leading Title VII cases of *McDonnell Douglas* and *Burdine* are applicable to § 1983 cases, one might assume, as do the appellants in this case, that a proper jury instruction in a § 1983 action would have to track *McDonnell Douglas* and *Burdine*. This, however, is not necessarily so. Many courts have discussed the application of the *McDonnell Douglas* standards to jury trials, and several have concluded that jury instructions in discrimination cases need not always precisely fol-

---

**2.** The relevant part of the § 1983 instructions given by the district court is as follows:

As part of her equal protection claim, the plaintiff alleges that she was not paid and/or promoted equally with other men because of her sex.

In order for you, the jury, to consider this evidence as part of the plaintiff's equal protection claim, the plaintiff must first prove that she was qualified for and applied for a promotion or a pay raise and that she was considered and denied that promotion or a pay raise and that other employees with similar qualifications were promoted or given a pay raise. If you find that the plaintiff has proven this, the defendants need only present legitimate nondiscriminatory reasons for treating her differently. The defendants need not persuade you that they were actually motivated by the proffered reasons, but it is sufficient if the defendants' evidence raises a genuine issue as to whether they discriminated against the plaintiff. If you find that the defendants have presented legitimate nondiscriminatory reasons for their conduct, the plaintiff must then prove that those reasons are merely a pretext for hiding discriminatory conduct.

. . . .

In this case, the plaintiff claimed that she was denied equal protection because the defendants rejected her for promotion based on her sex, paid her differently because of her sex and treated her differently on a daily basis because of her sex. To establish that this allegation is a deprivation of equal protection, the plaintiff

must show that the school board purposely discriminated against her because she was a woman.

To show purposeful discrimination, the plaintiff must establish by a preponderance of the evidence that the defendants intended to discriminate against women and that this intent to discriminate was a motivating factor in the defendants' decisions concerning the plaintiff. App. 590–91, 593.

**3.** Under *Burdine,* the plaintiff has the initial burden of establishing a prima facie case raising an inference of discrimination. Once the plaintiff has done this, the burden of production "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Id.* at 253, 101 S.Ct. at 1093 (quoting *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). The burden placed on the defendant at this point is "the burden of going forward with admissible evidence of a legitimate, nondiscriminatory reason for not promoting the plaintif[f]." *Sones-Morgan v. Hertz Corp.,* 725 F.2d 1070, 1072 (6th Cir.1984). If the defendant carries that burden, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. The burden of persuasion remains with the plaintiff throughout this process. *Id.*

low the *McDonnell Douglas* guidelines. *See, e.g., Blackwell,* 696 F.2d at 1179–80; *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1016–1019 (1st Cir.1979); *Laugesen v. Anaconda Co.,* 510 F.2d 307, 312 (6th Cir.1975). In *Loeb,* the First Circuit succinctly detailed the problems presented by applying *McDonnell Douglas* to a jury setting:

> *McDonnell Douglas* was not written as a prospective jury charge; to read its technical aspects to a jury ... will add little to the juror's understanding of the case and, even worse, may lead jurors to abandon their own judgment and to seize upon poorly understood legalisms to decide the ultimate question of discrimination.

*Loeb,* 600 F.2d at 1016. The ultimate question for the factfinder in any disparate treatment case is whether the defendant intentionally discriminated against the plaintiff. *United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). So long as the jury is instructed adequately on this issue, a jury instruction will not automatically be erroneous simply because it does not precisely follow the legal niceties of *McDonnell Douglas* and *Burdine.* Instructions are not erroneous "if they adequately inform the jury of the relevant consideration and provide a basis in law for aiding the jury in reaching its determination." *Blackwell,* 696 F.2d at 1181. Our review of the district court's § 1983 instructions convinces us that they are not erroneous under this standard.

■ The appellants also claim that the district court failed to give the shifting burden analysis of *Burdine* with respect to the retaliation claim.[4] The retaliation claim was brought under state law. The Michigan courts view the *McDonnell Douglas-Burdine* analysis as persuasive in resolving claims brought pursuant to the Elliott-Larsen Act. *See Clark v. Uniroyal,* 119

Mich.App. 820, 327 N.W.2d 372, 374 (1982); *Jenkins v. American Red Cross,* 141 Mich. App. 785, 369 N.W.2d 223, 227 n. 2 (1985) ("It is appropriate to rely on federal precedent in deciding discrimination cases"). We have reviewed the instructions given by the trial court and find no error. The ultimate question before the jury on this claim was whether the appellants had retaliated against Kitchen for seeking legal relief for discriminatory conduct. The jury was instructed that Kitchen had to prove by a preponderance of the evidence that she was retaliated against for bringing sex discrimination charges. The fact that the court did not instruct the jury on the shifting burdens of *Burdine* is not erroneous because the jury's proper concern was with the ultimate question of retaliation and not with the potentially confusing shifting of evidentiary burdens. *See Kocenda v. Detroit Edison Co.,* 139 Mich.App. 721, 363 N.W.2d 20, 21 (1984) (failure by trial court to instruct jury on alternating evidentiary burden not erroneous because alternating burden need not be used in every case).

### C.

The appellants also assert that the district court erred in inviting and granting a motion by Kitchen to present the Elliott-Larsen claim to the jury. Kitchen's complaint had originally demanded a jury only for the § 1983 claims. However, before trial, but after the jury had been impaneled, Kitchen's counsel stated that the failure to demand a jury for the Elliott-Larsen claim was inadvertent. The court then invited a motion to amend the complaint to add the additional jury demand. The motion was made and granted.

Rule 38(b) of the Federal Rules of Civil Procedure requires that a demand for a jury trial on a particular issue must be made within 10 days of the last pleading directed to the issue. However, Rule 39(b)

---

4. The court gave the following instructions with regard to the retaliation claim:

In order to prove her claim of retaliation, the plaintiff must prove by a preponderance of the evidence that first: she initiated an action seeking relief for conduct that was allegedly sexually discriminatory; and two, that one or

more of the defendants retaliated against her because she brought those charges; and three, that the fact that she filed these charges was a likely reason for any adverse conduct by the defendants.

App. 596.

provides that a district court in its discretion and upon motion may order a jury trial as to any issue even if the motion is late. A district court has broad discretion in ruling on a Rule 39(b) motion. *Misco, Inc. v. United States Steel Corp.*, 784 F.2d 198, 205 (6th Cir.1986). The court's discretion should be exercised in favor of granting a jury trial "in the absence of strong and compelling reasons to the contrary." *Local 783 v. General Elec. Co.*, 471 F.2d 751, 755 (6th Cir.) (quoting *Swofford v. B & W, Inc.*, 336 F.2d 406, 409 (5th Cir.1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965)), *cert. denied*, 414 U.S. 822, 94 S.Ct. 120, 38 L.Ed.2d 55 (1973).

▮▮▮ The question raised on this appeal is whether the district court abused its discretion by inviting and granting a late motion for a jury trial. The appellants contend that they were prejudiced by the trial court's actions because they had prepared the retaliation issue for bench trial and would have prepared it differently and picked a different jury had they known that the claim would be presented to the jury. The burden placed on a party forced to change its strategy in order to accommodate a jury trial has been held to be enough to justify the denial of a Rule 39(b) motion. *United States v. Unum, Inc.*, 658 F.2d 300, 303 (5th Cir. Unit A 1981). Generally, a district court does not abuse its discretion by denying a 39(b) motion if the only justification for delay is "mere inadvertence." *Misco*, 784 F.2d at 205. Additionally, the Ninth and Second Circuits have held that a 39(b) motion must be denied if the only reason for the delay was mistake or inadvertence. *Lewis v. Time Inc.*, 710 F.2d 549, 556–57 (9th Cir.1983); *Galella v. Onassis*, 487 F.2d 986, 996 (2d Cir.1973). In none of these cases, however, nor in any case cited by the appellants, did the appellate court reverse a district court's decision to grant a jury trial. All of these cases involved affirmances of denials of such motions. Therefore, given the lack of precedent for reversing the grant of a jury trial, and the Seventh Amendment right to a jury trial, we are extremely reluctant to reverse the trial court's decision to grant a jury trial, even though its actions were some-

what unorthodox. Furthermore, the appellants have made only conclusory claims of prejudice and have failed to convince us that they were discernibly prejudiced by the jury trial on the state claim. Therefore, we affirm the grant of the jury trial.

**D.**

The appellants also assign error to alleged inconsistencies existing between the jury verdict on the § 1983 and Elliott-Larsen claims and the court's ruling on the Title VII claim. The appellants' argument focuses on two points. First, they claim that the court's finding that the school board was liable for both discrimination and retaliation under Title VII is inconsistent with the jury's finding that the school board was not liable in any respect under either § 1983 or Elliott-Larsen. They next claim that the jury's verdict against the individual appellants with regard to the § 1983 claim is inconsistent with the court's finding for the individual appellants on Kitchen's Title VII promotion claim.

▮▮▮ As to the appellants' first point, the jury's finding of no liability against the school board on the § 1983 claim is not necessarily inconsistent with the court's finding of liability against the school board under Title VII. The board can be liable under § 1983, as the jury was properly instructed, only if the acts of the individual appellants were in accordance with some official policy or custom of the board. *See Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978) (governmental liability under § 1983 cannot be based on the theory of *respondeat superior*). By finding that Kitchen was denied equal protection, but not finding the board liable, the jury must have concluded that the causal nexus of board policy or custom was absent. The board's liability under Title VII, however, can be based on the theory of *respondeat superior*. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986) (Congress intended courts to look to agency principles for guidance in determining em-

ployer liability). Therefore, the district court could have found liability against the board under *respondeat superior.* Such a finding would not have conflicted with the jury's § 1983 finding.

■ However, the jury's failure to find the school board liable on the Elliott-Larsen retaliation claim is inconsistent with the court's finding of school board liability on the Title VII retaliation claim. The standards of liability for both claims appear to be identical. *See Jenkins,* 369 N.W.2d at 227 n. 2; *Clark,* 327 N.W.2d at 374. Both claims also arose out of the same underlying facts. The factual question of retaliation *vel non* is common to both the Elliott-Larsen and Title VII claims. Thus two factfinders examining the same facts reached opposite conclusions as to whether Kitchen had been retaliated against by the school board. Consequently, we must determine which factfinder's conclusion should prevail. We think it elementary that in such situations the principles of collateral estoppel control: "[w]hen a party has a right to a jury trial on an issue involved in a legal claim, the judge is ... bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim." *Lincoln v. Board of Regents,* 697 F.2d 928, 934 (11th Cir.), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983). *Accord Garza v. City of Omaha,* 814 F.2d 553, 557 (8th Cir.1987); *King v. Alco Controls Div.,* 746 F.2d 1331, 1332 & n. 2 (8th Cir.1984). The judge in the instant case was bound by the jury's finding on the retaliation issue. Accordingly, the court's finding of liability against the school board for the retaliation portion of the Title VII claim is reversed.

■ As to appellants' second point, we conclude that the jury's verdict on the

§ 1983 claim is not inconsistent with the judge's finding on Kitchen's Title VII promotion claim. The jury was not asked to find separately on the § 1983 compensation and promotion claims. Therefore, the jury could have rejected the promotion claim and still have found for Kitchen on the compensation claim, in which case no inconsistency would exist between the court's finding and the jury's verdict. Had the jury found for Kitchen on the promotion claim, any inconsistency existing between that finding and the court's finding on that claim would be harmless error. In such an event the judge would be bound by the jury's finding and his finding on the promotion claim would have to be overturned. However, because Kitchen has not appealed this issue, and because the judge's finding on the promotion claim favored the appellants, any error that may have occurred would not have prejudiced the appellants.[5]

■ The appellants also contend that the district court erred in submitting Kitchen's § 1983 promotion claim to the jury after it had found that she had failed to make a prima facie showing of discrimination on her promotion claim under Title VII. We are not persuaded that this action was legally erroneous. The standard by which the judge determined whether Kitchen had established a prima facie case on her equitable claim is quite different from the standard by which he reviewed the appellants' motion for a directed verdict on the legal claim. In determining whether a prima facie case was established under Title VII, the judge's duty was to weigh and evaluate all of the evidence before him. Moreover, in evaluating this evidence, the judge could make no special inferences in the plaintiff's favor.[6] Conversely, when

5. We feel compelled at this point to observe that the handling of the promotional issues below was not without error. The proper procedure would have been for the district judge to instruct the jury to decide separately the § 1983 claims of discrimination in promotion and compensation. Special interrogatories would have served this purpose. Once the jury was properly charged, the judge should have refrained from making his Title VII findings on the promotion claim. The jury's ultimate factfinding

on that issue would have and should have controlled. For the reasons explained earlier, however, the district court's failure to follow this procedure cannot be said to have prejudiced the appellants.

6. The judge's duty at this point is akin to his duty when a defendant makes a Rule 41(b) motion for involuntary dismissal in a nonjury case. That Rule provides that when a "motion to dismiss for insufficiency of the plaintiff's

ruling on the defendants' motion for a directed verdict on the § 1983, the judge could *not* weigh the evidence. *See Hersch v. United States,* 719 F.2d 873, 876–77 (6th Cir.1983) (court's role as factfinder distinct from its role in deciding a motion for a directed verdict). Instead, he had to view the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party. *Grimm v. Leinart,* 705 F.2d 179, 181 (6th Cir.1983), *cert. denied,* 465 U.S. 1066, 104 S.Ct. 1415, 79 L.Ed.2d 741 (1984). A court can only grant a motion for a directed verdict "if there is a complete absence of pleading or proof on an issue or issues material to the cause of action or where there are no controverted issues of fact upon which reasonable men could differ." *Rockwell International Corp. v. Regional Emergency Med. Serv.,* 688 F.2d 29, 31 (6th Cir.1982). If this standard is not met, the motion must be denied and the issue submitted to the jury.

When viewed in this light, the actions of the district judge are not reversible error. The court's finding on the Title VII claim was that Kitchen did not prove by a preponderance of the evidence that she was qualified for the promotion. The jury should have been allowed to hear the issue under § 1983 unless the failure of proof was so great that no reasonable juror could have concluded otherwise, in which case the judge would have granted a directed verdict in favor of the defendants. Therefore, because there was not a complete absence of proof on this issue, it was not error for the court to submit it to the jury.

### E.

■ Appellants' final points of error are that the district court's ruling on Kitchen's Title VII pay claim was clearly erroneous and the jury's verdict on the § 1983 claim was not supported by sufficient evidence. A district court's "[f]indings of fact ... shall not be set aside unless clearly erroneous." Fed.R.Civ.P. 52(a). A district

court's findings of fact will be deemed clearly erroneous on review only if, after reviewing the entire record, the appellate court "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Having reviewed the entire record, we are convinced that the district court's findings of fact are not clearly erroneous. Therefore, the district court's finding of a violation of Title VII by the appellants is affirmed.

■ The appellants' challenge to the jury's verdict is similarly unavailing. It is the jury's duty to weigh the evidence and decide the issue before it. Judicial review of a jury's verdict is limited to whether the conclusions or inferences drawn by the jury are reasonable. *Tennant v. Peoria & P.U. Ry. Co.,* 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944). Having reviewed the entire record, we hold that the conclusions drawn by the jury were indeed reasonable. Therefore, its verdict is affirmed.

### IV.

In summary, the jury instructions on the § 1983 claim and the Elliott-Larsen claim were proper. The jury's verdict on liability under § 1983 is AFFIRMED. The damage award that was made singly for both claims is AFFIRMED. The court's finding of liability for the school board on the Title VII retaliation claim is inconsistent with the jury's findings on the Elliott-Larsen claim. Therefore, the court's finding on retaliation is REVERSED and the case REMANDED for reconsideration of the Title VII backpay award in light of the reversal of the liability finding for the school board on the retaliation claim. The court's finding of liability on the Title VII compensation claim is AFFIRMED.

---

evidence [is made,] it becomes the duty of the court to weigh and evaluate the evidence." Weissinger v. United States, 423 F.2d 795, 798 (5th Cir.1970). The judge should refrain from

drawing special inferences in favor of the plaintiff. Emerson Elec. Co. v. Farmer, 427 F.2d 1082, 1086 (5th Cir.1970).