885 F.2d 871
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Robert Neil HOWELL, Defendant-Appellant.
 No. 89-5372.
 United States Court of Appeals, Sixth Circuit.
 Sept. 25, 1989.
 
 Before RALPH B. GUY, Jr., BOGGS and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Robert Neil Howell challenges his jury conviction and prison sentence for unlawfully possessing an unregistered firearm, in violation of 26 U.S.C. Sec. 5861(d). The firearm in question was destroyed by mistake by a government agent prior to trial. Howell claims that the district court erred in instructing the jury that it could infer that the prosecution's production of the gun at trial would have operated against the best interest of the prosecution only if the jury found that the agent destroyed the firearm deliberately and in bad faith. Howell claims that by requiring a finding of bad faith as a prerequisite to the inference, the district court violated his due process rights. We conclude that the challenged jury instruction did not violate Howell's due process rights and, accordingly, affirm.
 
 
 2
 On August 12, 1986, Howell's truck was repossessed by George Telfer, an account adjuster and customer service representative for the Chrysler Credit Corporation. The next day, when Telfer and his co-worker, David W. Thompson, inventoried the truck, Thompson found a sawed-off shotgun wrapped in a shirt beneath the seat. Thompson notified Telfer of his find and Telfer contacted the police. Although a written inventory of the items found in the truck was made, neither Telfer nor Thompson measured the length of the shotgun. Nevertheless, Thompson testified that it was approximately eighteen inches long. The shotgun was given to Brentwood Police Department Detective John Caldwell, who subsequently contacted the Bureau of Alcohol, Tobacco and Firearms (ATF). On August 18, 1986, the firearm was given to ATF Agent Chuck Lowe. Agent Lowe measured the weapon in preparing a property report prior to placing the gun in the evidence room. He noted that the barrel length was thirteen and one-half inches and that the overall length was twenty-one and one-eighth inches. No photographs were taken of the gun. Howell subsequently told Agent Lowe that he had purchased the shotgun from a stranger for self-defense and that the gun was sawed-off when he purchased it. Another ATF agent test-fired the shotgun, in Agent Lowe's presence, and found it operative.
 
 
 3
 In mid-December 1987, Robert Crofford became became the supervisor of ATF in Nashville. While checking the status of various property in the evidence room, Crofford mistakenly concluded that the shotgun was not implicated in any pending court action. Accordingly, he sought and received permission from ATF headquarters to destroy it. He destroyed the gun on July 6, 1988, without having inquired further with the clerk of the court or with the United States Attorney's office about the gun's status, and without having measured or photographed it. He later estimated the total length of the weapon as twenty-one inches, noting that the original shoulder stock was cut off into a pistol grip and that the barrel was cut down to make it a very short weapon.
 
 
 4
 On November 12, 1986, a federal grand jury indicted Howell for the unlawful possession of an unregistered firearm in violation of 26 U.S.C. Sec. 5861(d).[1] On December 10, 1986, Howell was given a copy of the standing discovery order issued in this case (App. 7), advising him of his right to inspect various documents and tangible objects, including the shotgun. On January 13, 1987, he signed a waiver of speedy trial in accordance with his request for a delay to determine whether he would qualify for pretrial diversion.[2] Howell was placed on pretrial diversion for a term of eighteen months on February 19, 1987. On July 6, 1988, after learning that Howell had breached the conditions of the pretrial diversion agreement, the United States filed a motion to restore the case to the trial docket. A December 1988 trial ended in a mistrial when the jury was unable to reach a verdict. The government elected to retry Howell. At the February 1989 retrial, the judge gave the jury instruction that prompted the present appeal. (App. 73). The jury found Howell guilty and he was sentenced to a term of imprisonment of one year and one day.
 
 I.
 
 5
 Our review of jury instructions necessitates examining the instructions "as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision." Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1010-11 (6th Cir.1987) (citing Blackwell v. Sun Elec. Corp., 696 F.2d 1176, 1181 (6th Cir.1983)). The jury instruction at issue advised the jury as follows:
 
 
 6
 There was evidence introduced before you that the weapon mentioned in this indictment was destroyed by agents of the government.
 
 
 7
 If you find that such destruction was deliberate and done in bad faith, you may infer that the production by the prosecution of the weapon before you would have operated against the best interest of the prosecution. If you find that it was not destroyed deliberately and in bad faith, you should not draw any such inference.
 
 
 8
 (App. 73). This instruction represented a modification of the instruction sought by the defendant at trial. Howell's requested instruction read as follows:
 
 
 9
 When a party deliberately destroys evidence, a presumption arises that if the evidence were produced at trial, it would operate against the party who deliberately destroyed it.
 
 
 10
 Appellant's Brief at 6.
 
 
 11
 Howell claims that the court's instruction and the destroyed evidence were critical in this case because his defense was predicated on his assertion that the length of the seized shotgun exceeded the defined length of a sawed-off shotgun described in 26 U.S.C. Sec. 5845(a). That section defines a firearm, in pertinent part, as follows:
 
 
 12
 The term "firearm" means (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length....
 
 
 13
 Howell claims that, without the weapon, his defense became illusory because he could not challenge the agent's testimony concerning the length of the barrel or of the gun. He claims that the jury instruction given by the court impermissibly focuses on the prosecution's motives rather than on the harm to himself as the defendant. Relying on Brady v. Maryland, 373 U.S. 83 (1963) (guaranteeing defendant meaningful access to evidence and opportunity to present complete defense irrespective of prosecution's good or bad faith), Howell claims that his fifth amendment right to a fundamentally fair trial was jeopardized by the federal agent's destruction of material evidence. Howell claims that, under the dictates of California v. Trombetta, 467 U.S. 479, 488-89 (1984), the government was obliged to preserve the shotgun because it constituted material evidence or evidence that might play a significant role in his defense.
 
 
 14
 The Supreme Court recently addressed the issue of the government's failure to preserve evidence in Arizona v. Youngblood, 109 S.Ct. 333 (1988). In that case, the defendant was convicted of molesting and sodomizing a young boy. At a hospital after the assault, a physician collected on swabs semen samples from the boy's body. The physician also collected, but failed to refrigerate, the boy's clothing. Subsequent tests on the swabs and the boy's clothing were inconclusive in identifying the boy's assailant. At trial, the defendant claimed that had timely tests been performed on properly preserved semen samples, he might have been completely exonerated instead of convicted of child molestation, sexual assault, and kidnapping. The trial court instructed the jury that if it found that the state had " 'allowed to be destroyed or lost any evidence whose content or quality are in issue,' " it could infer " 'that the true fact is against the State's interest.' " Id. at 338 (Stevens, J., concurring) (quoting 10 Tr. 90). Although the Arizona Court of Appeals found that the state breached its constitutional duty to preserve the semen samples and reversed defendant's conviction, the Supreme Court reversed that decision. The Court noted that the authorities' failure to refrigerate the clothing and to perform tests on the semen samples could, at worst, be characterized as negligence. The Court also noted that all of the evidence was made available to the defendant's expert, but the expert declined to test the samples himself. The Court held that, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 337.
 
 
 15
 Although the government claims that the Court's holding in Youngblood controls the outcome in this case, Howell seeks to distinguish his case from Youngblood by noting that, unlike the defendant in Youngblood, he is not seeking dismissal of his case. Rather, he is only seeking the very jury instruction that the defendant in Youngblood received.[3] We need not determine the extent to which Youngblood controls or is distinct from this case because our review of the jury instructions, as a whole, persuades us that the instruction in question adequately informed the jury of relevant considerations and offered a basis in law for framing its decision. We note that, although the standing discovery order extended to Howell access to the gun for nearly two years before trial, Howell did not seek to examine or measure the gun at any time prior to his first scheduled trial in January 1987, or thereafter. He never challenged or contested the testimony offered by witnesses regarding the estimated length of the gun. Most importantly, although he was provided with copies of all relevant police and ATF reports, Howell never contested the report of Agent Lowe, who actually measured the gun and recorded its length prior to placing it in the ATF evidence room. According to Lowe's measurements, the overall length of the gun was twenty-one and one-eighth inches long, which is well below the twenty-six inch length established in the definition of a firearm at 26 U.S.C. Sec. 5845(a)(2). Moreover, Howell admitted that he purchased the shotgun in a sawed-off condition.
 
 
 16
 Under the circumstances of this case, we are not persuaded that Howell should have been allowed to benefit by the requested jury instruction upon the government's inability to produce the weapon. The unavailability of the gun, in the face of other unrefuted evidence of its dimensions, is not sufficiently significant to have denied Howell a fair trial. See United States v. Agurs, 427 U.S. 97 (1976) (no constitutional violation for failure to disclose evidence unless omitted evidence establishes otherwise nonexistent reasonable doubt of guilt). In Trombetta, the Supreme Court indicated that the duty to preserve evidence extends to material evidence--evidence that has exculpatory value apparent before the destruction of the evidence--and that the nature of the evidence must be such that the defendant could not obtain comparable evidence by other means reasonably available. 467 U.S. at 488-89 (construing Agurs ). In this case, there is not so much as a hint that the shotgun's true dimensions were exculpatory. Moreover, in addition to having access to Lowe's report documenting the shotgun's dimensions, Howell had access to the gun itself for nearly two years but never sought to measure it for himself or to otherwise assess its evidentiary value.
 
 
 17
 The issue of the shotgun's destruction was placed before the jury, and the jury could have concluded that the destruction was actually against the government's interest. The jury also had before it the testimony and reports of several witnesses, all of whom estimated or confirmed the length of the shotgun as below the legal limit. Based on the evidence before the jury, we are not persuaded that either the jury instruction or the absence of the gun, in this case, violated Howell's fundamental right to a fair trial.
 
 
 18
 The district court's judgment is AFFIRMED.
 
 
 
 [1]
 Section 5861(d) provides: "It shall be unlawful for any person ...(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record...."
 
 
 [2]
 Howell's trial was originally scheduled for January 8, 1987
 
 
 [3]
 We note that the instruction in Youngblood did not authorize the jury to presume that the state's deliberate destruction or loss of evidence operated to its detriment. Rather, the instruction permitted the jury to draw such an inference. Therefore, Howell is not seeking the very instruction provided in Youngblood