933 F.2d 1010
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Avery MILLS, Defendant-Appellant.
 No. 90-5793.
 United States Court of Appeals, Sixth Circuit.
 May 21, 1991.
 
 Before BOYCE F. MARTIN, Jr., KRUPANSKY and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant Avery Mills has appealed his conviction pursuant to a jury verdict for obstruction and attempted obstruction of commerce by extortion in violation of the Hobbs Act, 18 U.S.C. Sec. 1951(a).
 
 
 2
 Avery Mills was elected Sheriff of Blount County Tennessee in August of 1986, and assumed the duties of that office on September 1 of that year. He continued to hold that office until after his arrest in this case. While the appellant was sheriff, five bonding companies were authorized to write bail bonds in the courts of Blount County. These included East Tennessee Bonding Company (East) of which Jackson Sanford was president and 40% owner, and Blount County Bonding Company (BCB), owned by partners Quenton Stiles and William Johnson. Both companies' employees regularly conducted business across state lines using interstate communications facilities and federally regulated financial institutions. The eighteen-count superseding indictment alleged that the defendant affected and attempted to affect interstate commerce in obtaining money from these two bonding companies.
 
 
 3
 After the appellant became sheriff, Sanford was approached by the appellant and they agreed to meet at a restaurant. Since Sanford had supported the appellant's opponent in the sheriff's election, he offered a postelection campaign contribution of $1500 to the appellant. Although Sanford brought an employee of East with him, the appellant made it clear that he desired to converse in private and not in the presence of Sanford's employee. Sanford dismissed his employee.
 
 
 4
 The appellant accepted Sanford's tendered $1500 and advised him that if he intended to write bonds in Blount County and if he wished to be considered the favored bonding company, Sanford would have to pay the appellant $1000 a month. Sanford countered with $500 per month, but the appellant refused the offer. They settled on $750 a month payable quarterly. Sanford testified: "I knew he couldn't help me, but I didn't want to be hurt ... I knew he could hurt me. I had been hurt before." He explained that his company had been "froze out" by a previous sheriff until he made the payoffs demanded. Sanford testified that without Blount County business, East probably "couldn't survive," since it transacted a major part of its business in the area.
 
 
 5
 Sanford testified that he was not desirous to "give up the profit" of his business, but felt it was necessary to pay "protection money" so his business would get a "fair shake." He made the following payments from an account at First Tennessee Bank: $1500 in January 1987, and $2250 on eight other occasions through January of 1989 for a total of $19,500.
 
 
 6
 The first two payments were made at the restaurant; the rest of the payments were made at a closed service station. The appellant repeatedly cautioned Sanford not to disclose the payments to anyone or they would "go down" together. The payments were presented in envelopes which Sanford usually slipped under a folded newspaper and placed on the seat of his automobile.
 
 
 7
 After a "religious experience," Sanford decided to stop the payments in March 1989. The appellant told Sanford that he was crazy. "You'll be back soon, you'll come back ... you can see me anytime you want to."
 
 
 8
 On the day before his arrest, at a meeting arranged by the appellant, he inquired of Sanford if he had "been talking to anybody" and advised Sanford that he would be in the same trouble as the appellant if he revealed their arrangement.
 
 
 9
 The appellant also received payments from Stiles of BCB. Stiles was personally acquainted with the appellant and had supported him in his campaign for sheriff making pre-election campaign contributions. In January 1987, Stiles briefly met the appellant in the appellant's office, and was directed to another building where the two could be alone and where the appellant commented that it had always been "customary to take care of the sheriff." As he said this, the appellant was rubbing his fingers and thumb together. Stiles wanted no part of a payoff arrangement, but was concerned that he would lose his business if he did not pay. After considering the situation, Stiles went to the authorities.
 
 
 10
 Beginning in April 1987, Stiles, in cooperation with the FBI, made monthly payments to the appellant through August 1987, and once again in February 1989, using currency furnished by the FBI. Tape recordings of the meetings indicated that the appellant frequently commented about BCB's successful business and about how the appellant had "done right" by Stiles and vice versa. The appellant also commented that some bondsmen, who had given the appellant "trouble," were not doing well in the county.
 
 
 11
 On appeal, the appellant's primary objections are to instructions given the jury wherein the district court defined the necessary elements of the offense with which the appellant was charged.
 
 
 12
 The applicable statute provides, in pertinent part:
 
 
 13
 (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by ... extortion or attempts or conspires to do so, ... shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.
 
 
 14
 (b) As used in this section--
 
 
 15
 * * *
 
 
 16
 * * *
 
 
 17
 (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.
 
 
 18
 (3) The term "commerce" means commerce within the District of Columbia, or any territory or Possession of the United States; all commerce between any point in a State, territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.
 
 
 19
 18 U.S.C. Sec. 1951(a), (b)(2), (3).
 
 
 20
 The appellant charged that the district court's instruction (1) failed to include "inducement" as an element of extortion "under color of official right," (2) failed to properly define fear as an element of "wrongful use of fear," (3) failed to properly define "affect in interstate commerce," and (4) failed to impart to the jury that the victims must reasonably have believed that the appellant had the ability, arising from his official authority, to harm or help the victim. The appellant also asserted that the district court erroneously failed to instruct the jury on the appellant's theory of defense and that there was insufficient evidence to support the jury verdict.
 
 
 21
 Jury instructions are reviewed in their entirety to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for reaching a decision. Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1010-11 (6th Cir.1987). A judgment can be reversed if the instructions, viewed as a whole, were confusing, misleading, or prejudicial. Id. at 1011. A proposed jury instruction that is prejudicially worded and which would have been of no more practical value to the jury than the instruction actually given by the trial court may be properly rejected by the trial court. United States v. Hessling, 845 F.2d 617, 621 (6th Cir.1988). The standard for reviewing the propriety of a jury instruction is an abuse of discretion standard. United States v. Butler 618 F.2d 411, 419 (6th Cir.1980).
 
 
 22
 This court has previously held the following:
 
 
 23
 [T]he crux of the statutory requirement of "under color of official right" is the wrongful use of one's office to obtain payments.... "It matters not whether the public official induces payments to perform his duties or not to perform his duties, or even, ... to perform or not to perform acts unrelated to his duties which can only be undertaken because of his official position. So long as the motivation for the payment focuses on the recipient's office, the conduct falls within the ambit of 18 U.S.C. Sec. 1951." [United States v. Braasch, 505 F.2d 139 (7th Cir.1974), cert. denied, 421 U.S. 910 (1975).]
 
 
 24
 Butler, 618 F.2d at 418, 420.
 
 
 25
 The appellant's interpretation of United States v. Jenkins, 902 F.2d 459 (6th Cir.1990), and Butler is incorrect. The great weight of authority supports the district court's instruction defining "inducement" as it applies within the context of this case. Accordingly, this court concludes that the district court applied Butler correctly. See, e.g., United States v. Evans, 910 F.2d 790, 796 (11th Cir.1990); United States v. Westmoreland, 841 F.2d 572, 581 (5th Cir.), cert. denied, 109 S.Ct. 62 (1988); United States v. Paschall, 772 F.2d 68, 73 (4th Cir.1985), cert. denied, 475 U.S. 1119 (1986); United States v. Jannotti, 673 F.2d 578, 594-96 (3d Cir.) (en banc), cert. denied, 457 U.S. 1106 (1982); United States v. French, 628 F.2d 1069, 1074 (8th Cir.), cert. denied, 449 U.S. 956 (1980); United States v. Hall, 536 F.2d 313, 320-21 (10th Cir.), cert. denied, 429 U.S. 919 (1976); United States v. Hathaway, 534 F.2d 386, 393-94 (1st Cir.1976); Braasch, 505 F.2d at 151. Contra, United States v. Aguon, 851 F.2d 1158, 1162-67 (9th Cir.1989) (en banc); United States v. O'Grady, 742 F.2d 682, 687 (2d Cir.1984) (en banc).
 
 
 26
 If the public official knows the motivation of the victim focuses on the public official's office and money is obtained by the public official which was not lawfully due and owing him or the office he represented, that is sufficient to satisfy the requirements of the law of extortion under color of official right.
 
 
 27
 United States v. Hedman, 630 F.2d 1184, 1194 n. 4 (7th Cir.1980), cert. denied, 458 U.S. 965 (1981).
 
 
 28
 This court finds no merit in the appellant's remaining assignments of error. Accordingly, the judgment of the district court is AFFIRMED.