963 F.2d 374
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee.
v.
Willie Charles RODGERS, Defendant-Appellant.
 No. 91-1807.
 United States Court of Appeals, Sixth Circuit.
 May 15, 1992.
 
 Before KEITH and MILBURN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, Willie Charles Rodgers, appeals his conviction, after a jury trial, in the United States District Court for the Eastern District of Michigan, Southern Division, of one count of possession with intent to distribute cocaine base within 1,000 feet of a Public School, in violation of 21 U.S.C. §§ 841(a)(1) and 845. His appeal challenges: 1) the sufficiency of the evidence; 2) the propriety of the court's jury instruction on "mere presence;" 3) the propriety of the court's admission of defendant's prior state felony conviction as impeachment evidence; and 4) the constitutionality of the Federal Sentencing Guidelines' differentiation between crack cocaine (a.k.a. cocaine base) and cocaine hydrochloride.
 
 
 2
 Our review compels affirmance.
 
 
 3
 On August 30, 1990, Detroit police executed a search warrant for the residence at 2519 Maxwell, a purported "crack house." Immediately before the police stationed near the home began executing the warrant, an undercover narcotics officer first attempted to make a controlled purchase of cocaine at the back door of the residence. Several male voices behind the closed door questioned the undercover officer's motives. After several moments, two men emerged from a side door to further question the officer, while a third male voice continued speaking to her from behind the closed back door. The officer, unable to conclude a purchase, left the house followed by the two men.
 
 
 4
 Two to three minutes after leaving the house, the undercover officer signalled the raiding officers to begin. As narcotics officers converged on the front porch of the house, they immediately detained a young woman who had just arrived on the scene. The officers next announced their presence and the existence of a search warrant. When no one in the house responded, the police forcibly entered the residence using a battering ram to break through the front door which was fortified with wood, sheet metal and scissor-meshed grating barricades.
 
 
 5
 At trial, the raiding officers told the court that, upon entering the house, they heard the sound of a toilet reservoir filling. A brief investigation of the bathroom revealed thirty rocks of cocaine in the toilet and $245 cash stashed behind the bathtub. Simultaneously, other officers rushed to the back door of the house where they nabbed the defendant as he tried to run out the back door, after throwing aside the two by four foot wooden barricades fortifying that exit. Police found only the defendant in the house.
 
 
 6
 At trial, police witnesses explained that such barricade fortifications are commonly found in crack houses to delay police narcotics agents long enough for the occupants to destroy any contraband on the premises. Further, police testimony noted that while the house contained $245 cash and 2.12 grams of cocaine base, police found no evidence of drug paraphernalia, which tends to suggest that the inhabitants of the house sold, rather than used, the drugs. The uncontroverted evidence at trial placed this home within 1,000 feet of Detroit public school property.
 
 
 7
 The defendant testified that while he knew his uncle, who purportedly owned the home at 2519 Maxwell, sold drugs, the defendant did not know there were drugs on the premises. The defendant further claimed never to have been involved in the uncle's drug trafficking. The defendant claimed that, at the time police executed the warrant, he was simply waiting at his uncle's house for Susan Coleman, who was living there at the time. The woman police detained on the porch during the raid was later identified as Susan Coleman.
 
 
 8
 After the jury convicted defendant of drug trafficking as charged, the court sentenced him to sixty months incarceration and six years of supervised release.
 
 
 9
 The district court denied the defendant's motion for judgment of acquittal, finding sufficient evidence to sustain the conviction.
 
 
 10
 * The defendant argues that the evidence is insufficient to sustain his conviction of possession of 2.12 grams of cocaine base with intent to sell it within 1,000 feet of school property.
 
 
 11
 Constitutional due process ensures that a defendant cannot be convicted except by proof beyond a reasonable doubt of each element of the crime charged. In re Winship, 397 U.S. 358, 361-362 (1970). In determining the sufficiency of the evidence, the court must not weigh the evidence, consider the credibility of witnesses, nor substitute its judgment for that of the jury. Morelock v. NCR Corp., 586 F.2d 1096, 1104-05 (6th Cir.1978), cert. denied 441 U.S. 906 (1979). The court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979), reh'g denied 444 U.S. 890 (1979); United States v. White, 932 F.2d 588, 589 (6th Cir.1991). The appellate court must review the evidence, even if exclusively circumstantial, and its inferences in favor of the government. United States v. Connery, 867 F.2d 929, 930 (6th Cir.1989); United States v. Adamo, 742 F.2d 927, 932 (6th Cir.1984), cert. denied, 469 U.S. 1193 (1984).
 
 
 12
 21 U.S.C. § 841(a)(1) sets forth in relevant part:
 
 
 13
 (a) ... it shall be unlawful for any person knowingly or intentionally--
 
 
 14
 (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;
 
 
 15
 21 U.S.C. § 860(a) (formerly § 845(a)) provides:
 
 
 16
 Any person who violates section 841(a)(1) or section 856 of this title by distributing, possessing with intent to distribute, or manufacture a controlled substance in or on, or within one thousand feet of, the real property comprising a public or private elementary, vocational or secondary school or a public or private college, junior college or university ... is subject to punishment ... The mandatory minimum sentence provisions of this paragraph shall not apply to offenses involving five grams or less of marijuana.
 
 
 17
 Criminal possession can be actual or constructive. White, 932 F.2d at 589. Constructive possession requires the defendant to know of the presence of the contraband and have the power to exercise dominion and control over it or over the premises in which it is found. White, 932 F.2d at 589. Mere proximity to drugs is insufficient. White, 932 F.2d at 589; United States v. Woods, 544 F.2d 242, 260 (6th Cir.1976), cert. denied 429 U.S. 969 (1976), 430 U.S. 954 (1976), 431 U.S. 954 (1976), and reh. denied, 431 U.S. 960 (1976), 435 U.S. 488 (1977).
 
 
 18
 The district court's finding of sufficient evidence to sustain the defendant's conviction is supported by the record. The undercover police narcotics officer who attempted the pre-raid buy saw two males leave the house and heard one man still inside. Minutes later when police executed their search warrant, with a narcotics strike force and battering rams, they nabbed the defendant attempting to flee through a barricaded back door.
 
 
 19
 In the first few moments in the house, police advance men heard the toilet refilling and, upon inspection, found thirty rocks of crack cocaine. While the defendant makes a great deal of the fact that, at trial, one officer noted cocaine in the toilet "bowl" and one indicated the drug was in the toilet "tank", it is clear that, when the testimony is read in context, both officers consistently referred to the toilet "bowl" in light of their testimony that they both saw the cocaine immediately upon entering the bathroom, without having to first dismantle the toilet.
 
 
 20
 In addition, the record contains evidence that the defendant periodically spent weeks at a time at the uncle's house and knew his uncle sold cocaine. The defendant was alone in the house when police entered and found that cocaine had recently been destroyed in the bathroom. Finally, evidence of the extensive fortifications protecting the house and the dearth of drug paraphernalia inside the house tends to show that the house was used primarily for the sale and not the use of narcotics. The totality of the circumstances, including the defendant's frequent presence in the home, knowledge of his uncle's illicit trade and his familiarity with the barricades, which he quickly maneuvered in his attempt to flee the police, tends to suggest the reason for defendant's presence in the home was narcotics trafficking. United States v. Woods, 544 F.2d at 260-61.
 
 
 21
 This court finds the evidence sufficient to sustain the defendant's conviction.
 
 II
 
 22
 The defendant next contends that the district court insufficiently instructed the jury regarding "mere presence" near drugs. The defendant claims that the court's instructions left the jury with the impression that he could be convicted with proof of mere presence in the crack house and guilty knowledge, when in fact the government had to prove actual or constructive possession, the latter of which requires proof of dominion and control.
 
 
 23
 The district court instructed the jury as follows:
 
 
 24
 The law recognizes two kinds of possession: actual and constructive possession. Actual possession is having physical custody and control over an object. A person who, although not in actual possession, has both the power and intention to exercise substantial control over an object, has constructive possession of it. Also, more than one person may have control over the narcotics, such that there is joint possession.
 
 
 25
 Simply being present where drugs are located or association with a person having possession, does not itself constitute possession. Joint Appendix, p. 31.
 
 
 26
 The defendant purportedly requested the court to give this instruction:
 
 
 27
 Mere presence at the scene of the crime and knowledge that a crime is being committed are not sufficient to establish that the defendant aided and abetted the crime, unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator. Brief of Defendant-Appellant, p. 19.
 
 
 28
 An appellate court must review jury instructions as a whole in order to determine whether they adequately inform the jury of the relevant considerations and provide a sound basis in law to aid the jury in reaching its decision. Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1010-11 (6th Cir.1987). A reviewing court may reverse a judgment if the instructions, viewed as a whole, were confusing, misleading and prejudicial. Beard v. Norwegian Caribbean Lines, 900 F.2d 71, 72-73 (6th Cir.1990); Lewis v. City of Irvine, Ky., 899 F.2d 451, 456 (6th Cir.1990); Kitchen, 825 F.2d at 1011.
 
 
 29
 A review of the instructions in this case reveals no undue confusion or prejudice. The defendant's concern that the jury may have been left with the impression that conviction required proof only of mere presence and guilty knowledge is meritless when we read the court's instruction on constructive possession in conjunction with its instruction on intent. The intent instruction reads, in relevant part:
 
 
 30
 The crime charged in this case requires proof of specific intent before the defendant can be convicted. Specific intent means more than the general intent to commit the act. To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids, purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.
 
 
 31
 An act is done "knowingly" if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.
 
 
 32
 An act is done "willfully" if done voluntarily and intentionally and with the specific intent to do something the law forbids; that is to say with bad purpose either to disobey or to disregard the law. Joint Appendix, p. 25 (emphasis added).
 
 
 33
 Upon reviewing the instructions to the jury as a whole, there is no indication that they were confusing, misleading, or prejudicial.
 
 III
 
 34
 The defendant charges that the district court improperly admitted evidence of his prior state felony retail fraud conviction for impeachment purposes.
 
 
 35
 The defendant had two state convictions for retail fraud, one a felony and one a misdemeanor. Upon motion of defense counsel, the court determined that the felony conviction was admissible pursuant to FED.R.EVID. 609(a)(2), which permits the admission into evidence of prior convictions involving dishonesty or false statement, regardless of punishment. After the court's ruling, defense counsel disclosed his intent to raise the conviction on direct examination of defendant to minimize its impact.
 
 
 36
 Pursuant to the plain language of FED.R.EVID. 609(a)(2), the district court properly admitted into evidence defendant's prior fraud conviction where, as here, its probative value outweighed any prejudicial effect. United States v. Sloman, 909 F.2d 176, 180 (6th Cir.1990). This is especially true in light of the fact that the defendant's counsel brought the issue before the jury first and thus opened the door to its admissibility. United States v. Sutton, 861 F.2d 461, 468-69 (6th Cir.1988), cert. denied, 489 U.S. 1071, 490 U.S. 1011, and reh'g denied, 492 U.S. 912.
 
 IV
 
 37
 Defendant relies on a Minnesota state court case, State v. Russell, Hennepin County Circuit Court No. 89067067, (which found a Minnesota state sentencing scheme unconstitutional), for the proposition that Sentencing Guideline § 2D1.1(c) is unconstitutional because it is without a rational basis and violates the Due Process and the Equal Protection Clauses of the Constitution.
 
 
 38
 A panel of this court has previously ruled on these issues and has found them to be without merit. U.S. v. Pickett, 941 F.2d 411 (6th Cir.1991).
 
 
 39
 The defendant also contends that black people are arrested for crack offenses more frequently than white people and so the enhanced penalties for crack possession improperly and discriminatorily impact against black people. Without evidence of purposeful discrimination specifically against him in this case, the defendant does not raise a meritorious claim. See, also, McCleskey v. Kemp, 481 U.S. 279 (1987), reh'g denied 482 U.S. 920.
 
 
 40
 The judgment of the district court is hereby AFFIRMED.