**The CARBORUNDUM COMPANY**

v.

**The TENNESSEE VALLEY AUTHORI-TY, Simon David Freeman, Richard Merrell Freeman, Robert Clement.**

Civ. No. 1–80–298.

United States District Court, E. D. Tennessee, S. D.

April 30, 1981.

See also, D.C. 518 F.Supp. 1260.

Stophel, Caldwell & Heggie, Chattanooga, Tenn., for Thomas O. Helton.

Apperson, Crump, Duzane & Maxwell, Memphis, Tenn., for George W. Grider and Charles M. Crump.

Herbert S. Sanger, Jr., Gen. Counsel, James E. Fox, Associate Gen. Counsel, Robert C. Glinski, Robert E. Washburn, TVA, Knoxville, Tenn., for defendants.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

This is an action in which an industrial electric customer seeks a declaratory judgment that the minimum electric service charge provision within an electric service contract is unenforceable by the electric supplier upon the customer having discontinued use of the service prior to the expiration of the term of the service contract. By counterclaim, the electric supplier seeks collection of accrued and unpaid electric service charges. Jurisdiction is invoked pursuant to 16 U.S.C. § 831c and 28 U.S.C. § 1331, and is not in dispute. The case is presently before the Court upon the defendant's motion for summary judgment (Court File # 24) and the defendant's motion to stay discovery pending disposition of the motion for summary judgment (Court File # 7).

The plaintiff, The Carborundum Company, alleges in its complaint that upon June 25, 1969, it entered into a contract with The Tennessee Valley Authority for electric service to an industrial plant for the production of silicon carbide which Carborundum intended to erect and place in operation near Jacksboro, Tennessee. The contract, as amended, committed the TVA to make available 24,000 kilowatts of electricity in

accordance with that agency's industrial electric rate schedules. Among other provisions the contract included the provision for the payment of a minimum monthly electric service charge. (Although not reflected in the complaint, the contract was to be effective for a term of ten years, extending from January 1, 1971 through December 31, 1980). By November of 1979 it is alleged that the TVA industrial electric rates had increased to the point where it was no longer economically feasible for Carborundum to operate its plant at Jacksboro and it ceased operation of the plant at that time. From and after January 1980 Carborundum made monthly payments to TVA based upon the small amount of electricity being consumed at its nonoperational Jacksboro Plant. The TVA, however, continued to demand payment pursuant to the minimum monthly charge provision of the power service contract, although it is alleged that it sustained no actual loss or damage as a result of Carborundum's discontinued use of electricity but on the contrary enjoyed a financial benefit equal to or in excess of the minimum monthly service charge it sought to collect. Carborundum seeks an adjudication declaring that the contract provision for a minimum monthly electric service charge is void and an adjudication of the appropriate amount due for electric service during the remaining term of the contract.

The TVA, in its answer and counterclaim, admits the existence of the electric service contract referred to in the complaint and admits that the contract was for a term of ten years. It further admits that the contract contained a provision for the payment of a minimum monthly electric service charge. The TVA denies that the minimum monthly service charge provision is in any way invalid or unenforceable. On the contrary, the TVA, by its counterclaim, seeks to effect collection from Carborundum of accrued electric service charges pursuant to the minimum monthly service charge provision of the contract.

The following facts appear undisputed in the record from the pleadings in the case and from affidavits, counteraffidavits and exhibits filed in the case: Upon June 25, 1969, Carborundum and TVA entered into an electric power contract which provided in relevant part as follows:

"WHEREAS Company is constructing a new silicon carbide plant in the vicinity of Jacksboro; and

"WHEREAS Company has requested that TVA supply the plant's total power requirements, and the parties wish to agree upon the terms and conditions for the supply of such power;

"NOW, THEREFORE, FOR AND IN CONSIDERATION OF the premises and of the mutual agreements hereinafter set forth, and subject to the provisions of the Tennessee Valley Authority Act of 1933, as amended, the parties hereto mutually agree as follows:

"1. *Term of Contract.* This contract shall become effective on the date first above written and shall continue in effect through December 31, 1980; PROVIDED, however, that all provisions hereof relating to the supply of and payment for normal power shall become effective on January 1, 1971.

\* \* \* \* \* \*

"3. *Availability of Normal Power.* TVA shall make available to Company hereunder 1,000 kw of firm power and 20,000 kw of interruptible power from January 1, 1971 through December 31, 1980 . . . .

\* \* \* \* \* \*

"7. *Rates.* Company shall pay TVA monthly for power and energy available under this contract. . . . such payments shall be in accordance with the rates and provisions of TVA's general power rate— Schedule C–2, as modified or replaced by TVA from time to time. . . .

\* \* \* \* \* \*

"Notwithstanding anything in the body of this contract or in the attached rate schedule which might be construed to the contrary, the monthly bill for normal power and energy shall in no case be less than $1.30 per month per kw or any minimum rate per kw that may be applicable under the aforesaid Rate Schedule C–2 as

so modified or replaced from time to time, whichever is higher...."

Carborundum constructed its silicon carbide plant at Jacksboro, Tennessee, and the plant had been placed in operation by January 1971, all as contemplated in the foregoing contract. Since that date electric service has been provided to the plant by TVA pursuant to the contract. In the interval between 1971 and 1979 certain amendments were made to the contract, but these amendments are not material to the issues here involved.

Between the date of the execution of the contract and 1979 the TVA made several very substantial rate increases in its General Power Rate—Schedule C–2, with a result that by November of 1979 Carborundum had concluded that it was no longer economically feasible to operate its Jacksboro Plant. It accordingly ceased production of silicon carbide at the plant at that time. Thereafter, it continued to use only a small amount of electricity, apparently such use being incident to the maintenance of its dormant plant.

Commencing as of November 1, 1979, Carborundum declined to make payments in accordance with the monthly minimum bill provisions of paragraph 7 of the power contract, but rather remitted to the TVA upon the basis of paying for the small amount of electricity actually used.

The total of the minimum bills from November 1979 through 1980, computed in accordance with the minimum bill provisions of paragraph 7 of the power contract, would be in the sum of $1,079,131.13. Pursuant to the provisions of the Rate Schedule, the total amount of the late payment charges on this amount through October 27, 1980, would have been $60,130.72, resulting in a total of minimum bills and late pay-

ments due under the terms of the contract as of October 27, 1980 in the sum of $1,139,-261.85. As of the same date Carborundum had paid a total of $44,224.80 upon monthly accounts during the same period, leaving a net of $1,095,037.05 due under the terms of the contract as of October 27, 1980. The defendant's counterclaim, filed as of November 6, 1980, makes no claim for minimum monthly bills that may have accrued after September 30, 1980 and the termination of the ten-year term of the contract upon December 31, 1980, nor does it make any claim for late payment charges that may have accrued after October 27, 1980.

In addition to the foregoing undisputed facts, the parties have each submitted additional materials relating to TVA rate making authority and procedures, as well as TVA power production costs and facilities. In view of the well established legal principal that the setting of power rates under the Tennessee Valley Authority Act is not subject to judicial review (*See Ferguson v. Electric Power Board of Chattanooga and TVA*, 378 F.Supp. 787 (E.D.Tenn.1974), *aff'd and opinion of district court adopted*, 511 F.2d 1403 (6th Cir. 1975), it is unnecessary here to summarize the matters tendered in support and opposition to that agency's rate making authority and procedures. *See* 16 U.S.C. §§ 831i and 831n–4(f). *See also Mobil Oil Corp. v. TVA*, 387 F.Supp. 498 (N.D.Ala.1974). In view of this Court's conclusion hereinafter reached that the minimum bill provision of paragraph 7 of the subject power contract is valid and enforceable, it is unnecessary to summarize the matters tendered in support and opposition to the TVA's power production costs and facilities.[1]

Suffice it to say that, upon the basis of the foregoing undisputed facts, it is the

---

1. The plaintiff contends that upon a trial of the case it could produce evidence that the reduction of its power requirements has so reduced the peak power costs on the TVA system as to effect a savings to that agency equal to or in excess of the minimum monthly bills sought to be collected from the plaintiff. Apart from the fact that this contention makes the assumption that the cost of supplying power to the plaintiff

would have been derived from TVA's peak power production costs, rather than from its total power production costs, power production costs become irrelevant in a judicial forum when the minimum monthly bill is construed as a part of a judicially nonreviewable rate structure rather than a statement of liquidated damage or penalty.

contention of Carborundum that the minimum bill provision of paragraph 7 of the power contract is in the nature of a penalty or statement of liquidated damages, entitling the plaintiff to a trial upon the reasonableness of such charges. Upon the contrary, the TVA asserts that the minimum bill provision of the power contract is but a part of the TVA power rate schedule enforceable in accordance with its terms, the same as any other applicable power rate, and not subject to judicial review.

■ Before further considering the defendant's motion for summary judgment, it should be initially noted that Simon David Freeman, Richard Merrell Freeman and Robert Clement are named as individual defendants in the caption to the plaintiff's complaint. They are not further identified or implicated in the allegations of the complaint. While the Court can take judicial notice that the individual defendants are Directors of the TVA, no cause of action is alleged against them in their individual or official capacity. Moreover, lawsuits involving TVA's activities are to be brought against TVA in its corporate name and not against a director or other official of that agency. *See* 16 U.S.C. § 831c(b); Pub.L. No. 94–574, 90 Stat. 2721 (1976) (amending 5 U.S.C. § 603); and 1976 *U.S.Code Cong. & Adm.News*, p. 6121. The individual defendants will accordingly be dismissed for lack of jurisdiction.

The issues presented upon the present motion for summary judgment in this lawsuit have been carefully and thoroughly reviewed and, in the opinion of this Court, correctly decided by Judge Lynne in his well reasoned opinion in the case of *Mobil Oil Corp. v. Tennessee Valley Authority*, 387 F.Supp. 498 (N.D.Ala.1974). The relevant factual background in the *Mobil Oil* case and in the present case are almost identical. The contractual provision under review in the two cases is identical. Moreover, Judge Lynne considers and distinguishes the opinion in the case of *City of Memphis, Tennessee v. Ford Motor Co.*, 304 F.2d 845 (6th Cir. 1962), the very case upon which the plaintiff here relies in support of

its contention that the minimum monthly bill is not a power rate but rather is in the nature of a penalty subject to attack as to its reasonableness.

■ It would serve little purpose for this Court to restate the reasoning of the *Mobil Oil* case other than to restate the conclusion there reached that the minimum bill provision of the contract is not a liquidated damage or penalty provision subject to judicial review as to its reasonableness, but rather is simply an integral portion of the rates which TVA has fixed, pursuant to express congressional authority, for electric service to industries, enforceable and collectible during the term of the contract.

In view of the conclusion herein reached by the Court, the TVA motion for stay of discovery has become moot.

An order will accordingly enter dismissing this action as to the individual defendants for lack of jurisdiction, sustaining the defendant's motion for summary judgment, dismissing the plaintiff's original action for a declaratory judgment, and granting judgment upon the defendant's counterclaim in the sum of $1,095,037.05.

Since it appears that three additional minimum monthly bills may have accrued following the filing of the counterclaim herein and prior to the expiration of the power contract upon December 31, 1980, the entry of a final judgment will be withheld for 20 days to permit the filing of an agreed statement regarding such matters or the filing of further pleadings and affidavits with regard thereto, to the end that all issues between the parties may be adjudicated in these proceedings.