932 F.2d 968
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Phillip MATTHEWS, Individually and as Class Representative,
Plaintiff-Appellant,
v.
TOWN OF GREENEVILLE, the Tennessee Valley Authority, Robert
Lay, Individually and as the Superintendent of Greeneville
Light and Power System, Norman Williamson, as Acting
Superintendent, Charles Worley, Paul Hite, Jess Musick, J.E.
Bullen, as Members of the Board of Public Utilities of the
Greeneville Light and Power System, Defendants-Appellees.
 No. 90-5772.
 United States Court of Appeals, Sixth Circuit.
 May 2, 1991.
 
 Before KENNEDY and NATHANIEL R. JONES, Circuit Judges, and CHURCHILL,* Senior District Judge.
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Plaintiff-appellant Phillip Matthews brought this class action suit in order to recover alleged overcharges collected by the Greeneville Light and Power System (GLPS). Defendant-appellee Tennessee Valley Authority (TVA) produces and sells electricity at wholesale rates to 160 cities and cooperative distributors. Matthews charges the TVA with failure to force the GLPS to maintain its accounts in compliance with the Federal Energy Regulatory System (FERC) Uniform System of Accounts. Matthews argues that the improper accounting procedures used by GLPS resulted in ratepayers being overcharged. The requested relief included a writ of mandamus compelling TVA to ensure that GLPS and the other defendants abide by FERC accounting procedures. Matthews also sought damages of $10,000,000.00, the amount which Matthews claimed ratepayers had been overcharged as a result of the improper accounting procedures.
 
 
 2
 The district court granted TVA's motion for summary judgment, and dismissed the claims against the remaining defendants without prejudice. For the following reasons, we affirm.
 
 
 3
 * TVA has supplied Greeneville, Tennessee with power since 1945. The congressional policy regarding the sale of electricity by the TVA to municipalities like Greeneville is to "permit domestic and rural use at the lowest possible rates[.]" 16 U.S.C. Sec. 831j (1988). The TVA Board is authorized to specify the rates at which TVA-supplied power may be charged to the consumer by municipalities. 16 U.S.C. Sec. 831i (1988). Tennessee statutory law empowers municipalities to contract with TVA for electrical power. Tenn.Code Ann. Sec. 7-52-201 (1985).
 
 
 4
 The obligation of GLPS to apply FERC accounting guidelines does not arise from federal law, but from the contract between TVA and GLPS which sets the terms under which TVA provides electricity to the GLPS. In its Schedule of Terms and Conditions, the contract provides that
 
 
 5
 Municipality shall keep the general books of accounts of the electric system according to the Federal Energy Regulatory Commission Uniform System of Accounts.
 
 
 6
 Other pertinent provisions of the contract provide that
 
 
 7
 Municipality's operations of a municipal electric system and TVA's wholesale service thereto are primarily for the benefit of the consumers of electricity.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 [5(c) ] If the rates and charges in effect at any time provide revenues that are more than sufficient for such purposes ... Board and TVA shall agree upon a reduction in said rates and charges, and Municipality shall promptly put such reduced rates and charges into effect.
 
 
 11
 * * *
 
 
 12
 * * *
 
 
 13
 [6(b) ] [R]esale rates and charges shall be reduced from time to time to the lowest practicable levels[.]
 
 
 14
 On November 10, 1988, Matthews filed this suit against the GLPS, TVA, and Robert Lay, manager of GLPS.[1] Jurisdiction was based on 28 U.S.C. Sec. 1331, which accords district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The only federal issue raised in Matthews' complaint is the claim against TVA. The state law claims were considered by the district court through the exercise of pendent jurisdiction.
 
 
 15
 Following the defendants' motion to dismiss or, in the alternative, for summary judgment, Matthews made an effort to depose several TVA employees. The defendants, however, filed motions for protective orders to stay discovery. A Magistrate granted the motions in March 1989.
 
 
 16
 In evaluating TVA's motion for summary judgment, the district court first considered whether TVA's failure to act was subject to judicial review under the Administrative Procedure Act (APA). Under section 701(a) of the APA, agency actions are judicially reviewable unless "[the] agency action is committed to agency discretion by law." 5 U.S.C. Sec. 701(a)(2)(1988). The district court found there was no specific statutory mandate requiring TVA to enforce the electric power contract between itself and GLPS. Thus, the court concluded that Matthews "failed to establish that Congress did not commit to TVA's discretion the refusal to institute enforcement proceedings." In any event, the court found that 16 U.S.C. Sec. 831i vests TVA with absolute discretion, without judicial review, to decline enforcement of the contractual provision at issue.[2] Once TVA was dismissed, federal question jurisdiction no longer existed. As a result, the court dismissed without prejudice the remaining pendent state law claims based on breach of contract, tortuous breach of contract, and misfeasance in office. J.App. at 90.
 
 II
 
 17
 A long line of precedent exists establishing that TVA rates are not judicially reviewable. See, e.g., Carborundum Co. v. Tennessee Valley Authority, 521 F.Supp. 590, 593 (E.D.Tenn.1981) (referring to "the well established legal principal that the setting of power rates under the Tennessee Valley Authority Act is not subject to judicial review."). Matthews contends that the TVA rate cases are not germane because the gravamen of his complaint concerns the TVA's failure to enforce its contract with GLPS.[3] Matthews alleges that due to TVA's failure to enforce the contract,[4] he and the members of the proposed class have been paying excessive power rates in violation of the contract between Greeneville and TVA and the intent of Congress as expressed in 16 U.S.C. Sec. 831j, supra. Section 831j and the contract both provide that TVA-supplied energy is to be furnished to consumers at the lowest possible rates.
 
 
 18
 Matthews' complaint against the TVA must be evaluated under the provisions of the Administrative Procedure Act (APA). Matthews argues that he has standing to challenge TVA actions under section 702 of the APA, which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof[.]" 5 U.S.C. Sec. 702 (1988) (emphasis added). Section 702, which Matthews relies on, is addressed specifically to persons adversely affected by "agency action."
 
 
 19
 Matthews' claim, however, does not involve agency action, but rather, agency inaction: TVA's failure to ensure compliance with FERC guidelines. Under Heckler v. Chaney, 470 U.S. 821, 832 (1985), an agency's decision not to take action is "presumptively unreviewable." The import of Heckler v. Chaney was that it interpreted section 701(a)(2), which provides that actions "committed to agency discretion by law" are not judicially reviewable, to include agency refusals to act. Id. at 838. See generally Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410-13 (1971) (explaining scope of "committed to agency discretion" exception).
 
 
 20
 In Heckler, prison inmates sentenced to death by lethal injection of certain drugs requested the Food and Drug Administration (FDA) to approve the drugs as "safe and effective" for human execution. The FDA had approved the drugs for other medical purposes. Id. at 823. The unanimous Court rejected the inmates' argument that the FDA's failure to take enforcement action was reviewable under the APA. The Court found agency inaction to be generally unsuitable for judicial review because: (1) an agency's decision not to take enforcement action involves factors within the agency's peculiar area of expertise; (2) a refusal to act does not usually involve an exercise of coercive authority over an individual's constitutional rights; and (3) the refusal to take action has traditionally been regarded as "the special province of the Executive Branch." Id. at 831-32.
 
 
 21
 Heckler v. Chaney provides that under certain circumstances the presumption of unreviewability may be overcome. The Court stated that:
 
 
 22
 [T]he presumption may be rebutted where the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers. Thus, in establishing this presumption in the APA, Congress did not set agencies free to disregard legislative direction in the statutory scheme that the agency administers.
 
 
 23
 Heckler, 470 U.S. at 832-33.
 
 
 24
 As an example of an instance where the presumption of unreviewability was overcome because Congress provided adequate guidelines for the agency to follow, the Court in Chaney discussed the Labor-Management Reporting and Disclosure Act ("the Act"). The Act provided that when a union member filed a complaint, "[t]he Secretary of Labor shall investigate ... and he shall ... bring a civil claim [if probable cause exists]." 470 U.S. at 833 (discussing Dunlop v. Bachowski, 421 U.S. 560 (1975)). The Secretary's decision not to take action in a specific instance was judicially reviewable because the Act required the Secretary to file suit if certain "clearly defined" factors were present. Id. at 834. The Act "quite clearly withdrew discretion from the agency and provided guidelines for exercise of its enforcement power." Id.
 
 
 25
 Matthews believes that the TVA Act, 16 U.S.C. Secs. 831i, 831n-4(f), stating that TVA power be supplied at the lowest cost possible, provides adequate law to apply. He also relies on TVA's contractual obligations to reduce rates in the face of surplus revenues. Paragraph 5(c) of the contract provides that rates "shall" be reduced if the rates in effect "provide revenues that are more than sufficient for such purposes." Matthews surmises that $10,000,000.00 in reserve is "more than sufficient", and that TVA's failure to enforce the contract was arbitrary and capricious.
 
 
 26
 We recognize that under Heckler v. Chaney the unreviewability of an agency's failure to act is merely a presumption which may be rebutted if "the substantive statute" provides the agency with adequate guidelines. 470 U.S. at 832-22. The substantive statute in this case is the TVA Act, and not the contract between TVA and the GLPS. As a result, Matthews' argument that the contract provides "law to apply" is without merit. With respect to the TVA Act, the only guidelines established are that TVA sales of electricity to municipalities should "permit domestic and rural use at the lowest possible rates." 16 U.S.C. Sec. 831j (1988). There is no language requiring the TVA to take action if a provision in one of its contracts is not followed. The TVA Act does not even require action by the TVA if there is evidence that electricity is not being provided at the lowest possible rates to consumers. On the contrary, the TVA Act accords the TVA a great amount of discretion in its contractual relations with municipalities.
 
 
 27
 Under these circumstances, a vague admonition to maintain "the lowest possible rates" does not come close to providing the sort of guidelines which would permit meaningful judicial review. Thus, not only is TVA's decision to require adherence to FERC guidelines in the GLPS contract committed to agency discretion, but the enforcement of that obligation is completely within TVA's discretion as well.
 
 
 28
 We realize that our decision effectively leaves Matthews with no alternative but to pursue a legislative remedy. The federal court system, however, cannot assume the role of a (quasi) public service commission for TVA ratepayers. The broad grant of authority Congress has afforded the TVA in the TVA Act precludes judicial review in this instance. We find that TVA's failure to force GLPS to utilize FERC standards is unreviewable, and that the district court correctly granted summary judgment in favor of TVA.
 
 III
 
 29
 Both Matthews and the remaining defendants have appealed the district court's dismissal without prejudice of the claims based on state law. Matthews would have this court reverse the dismissal to allow the merits of the state claim to be addressed. The defendants argue for a dismissal with prejudice. We find, however, that the district court did not abuse its discretion in dismissing the state law claims without prejudice.
 
 
 30
 Once the district court concluded that jurisdiction could not be exercised over Matthew's claim against TVA, it retained jurisdiction over the state law claims through pendent jurisdiction. "The decision whether to exercise pendent jurisdiction [over remaining state law claims] is generally left to the discretion of the trial court." Kitchen v. Chippewa Valley Schools, 825 F.2d 1004, 1009 (6th Cir.1987). A district court may decide to retain jurisdiction if compelled to by fairness concerns or "overwhelming interests in judicial economy." Province v. Cleveland Press Pub. Co., 787 F.2d 1047, 1055 (6th Cir.1986). In this case, we cannot discern either an "overwhelming interest in judicial economy", or a fairness issue, which would compel a reversal of the district court's dismissal of the pendent state law claims.[5]
 
 IV
 
 31
 The district court's grant of summary judgment in favor of TVA, and the dismissal without prejudice of the pendent state law claims, is AFFIRMED.
 
 
 
 *
 The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 On March 24, 1989, Matthews filed an Amended and Restated Complaint. J.App. at 17-39. The amended complaint dropped GLPS as a defendant, but added as defendants the Town of Greeneville and several members of Greeneville's Board of Public Utilities
 
 
 [2]
 Section 831i provides in pertinent part:
 [T]he Board is authorized to include in any contract for the sale of power such terms and conditions, including resale rate schedules, and to provide for such rules and regulations as in its judgment may be necessary or desirable for carrying out the purposes of this chapter[.]
 16 U.S.C. Sec. 831i (1988).
 
 
 [3]
 Matthews bases a good deal of his argument on a law review article arguing that the nonreviewability of TVA power rate determinations is a "relic of the agency's initial period of crisis." Wirtz, TVA, the Courts, and Power Rates: A Study in Judicial Review, 49 Tenn.L.R. 709, 739 (1982) (appended to Matthews' brief). In the article, Professor Wirtz concedes the lack of judicial authority for his position, but nevertheless makes a cogent argument for why TVA rates should be subject to judicial review
 
 
 [4]
 Matthews states that he has evidence that agency inaction violated the congressional mandate concerning low rates and that this inaction resulted in GLPS reserves of over $10,000,000.00. Much of this evidence is contained in Matthews' own affidavit and focuses on his twelve years as controller for GLPS. The allegations in the affidavit focus on violations of FERC accounting procedures, specifically, the failure to capitalize certain labor expenses. As a result, net income was underestimated and property taxes paid by GLPS were lower. Because net income is taken into account by TVA in setting rate schedules, Matthews concludes that the accounting violations resulted in higher rates for electricity consumers
 
 
 [5]
 In light of our conclusions that the TVA's decision not to enforce the contract is committed to agency discretion, and that the state claims were correctly dismissed without prejudice, we find it unnecessary to address the issues relating to the efficacy of the mandamus remedy, discovery, and third party standing
 We also reject Matthews' argument that, after the dismissal of TVA, the district court retained federal question jurisdiction over the remaining defendants under 28 U.S.C. Sec. 1331 because this case "arises under" the FERC Uniform System of Accounts. The basic rule in this area is that "a suit arises under the law that creates the cause of action." American Well Works v. Layne & Bowler Co., 241 U.S. 257, 260 (1916). In this case, we cannot conclude that the FERC accounting guidelines create any cause of action. Instead, this case involves the interpretation of a contract which invokes federal accounting standards. It is well settled that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 813 (1986).