Charles W. and Margaret Laverne
**BEARD, Plaintiffs–Appellants,**

v.

**NORWEGIAN CARIBBEAN LINES,
Defendant–Appellee.**

**No. 89–1212.**

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 8, 1990.
Decided April 2, 1990.

Dennis M. O'Bryan, Gary William Baun (argued), Howard M. Cohen, Birmingham, Mich., for plaintiffs-appellants.

John D. Mabley (argued), Charles G. Goedert, Hill, Lewis, Adams, Goodrich & Tait, Detroit, Mich., for defendant-appellee.

Before KRUPANSKY and NELSON, Circuit Judges; and PECK, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Plaintiffs-appellants Charles W. Beard and Margaret Laverne Beard, his wife, appeal from a judgment pursuant to a jury verdict for defendant-appellee Norwegian Caribbean Lines, a foreign corporation, in this diversity action initiated under the maritime laws of the United States for alleged negligence resulting in personal injury and loss of consortium. This action was filed in the Circuit Court for the County of Wayne in the State of Michigan pursuant to the "Savings to Suiters Clause," 28 U.S.C. § 1333. The action was removed to the United States District Court for the Eastern District of Michigan under diversity jurisdiction.

The facts of the case are brief and simple. Late on the afternoon of November 4, 1987, appellant Charles Beard (Beard) joined in a "pick-up" game of basketball with five other players on the sport deck of the M/S Starward, a vessel owned by appellee, then sailing in navigable waters. After Beard had been playing for approximately half an hour, his knee collapsed and he fell to the deck. Beard's physician, Dr. O'Hara, testified that the injury to the knee, which required surgery and lengthy rehabilitation, was a common basketball injury.

Beard and his wife initiated this action against the appellee for negligence, alleging that Beard slipped on a wet spot on the deck, presumably from water from the preceding day's heavy rain. Substantial evidence was introduced, however, not only from ship's personnel, but also from other players in the game, that while the deck was slightly worn, it had been thoroughly dried and no one other than a personal friend of Beard observed water on the deck. On these facts, and pursuant to the following jury instruction, the jury returned a verdict against appellants:

> Ordinary care is not an absolute term but a relative one. That is to say, in deciding whether ordinary care was exercised in a given case, the conduct in question must be viewed in the light of all the surrounding circumstances as shown by the evidence in the case.

> Because the amount of care exercised by a reasonably prudent person varies in proportion to the danger known to be involved in what is being done, it follows that the amount of caution required, in the use of ordinary care, will vary with the nature of what is being done, and all the surrounding circumstances shown by the evidence in the case. To put it another way, any increase in foreseeable danger requires increased care. Under maritime law, a shipowner owes its passengers the duty of exercising reasonable care under the circumstances of each case. The vessel as a common carrier of passengers owes to them a duty of safe transportation. That duty, generally speaking, is to safely embark the passenger, carry him to his port of destination, and to see that he is safely landed.

Appellants objected to these instructions, and insist, on appeal, that the district court should have instructed the jurors that the duty of a shipowner to its fare-paying passengers is "the duty to exercise a very high degree of care," or, stated differently, the "greatest possible," or "highest degree" of care.

■ Jury instructions are reviewed as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision. *Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1010–11 (6th Cir.1987). A judgment may be reversed only if the instructions, viewed as a

whole, were confusing, misleading, or prejudicial. *Id.*

■ As the accident in this case occurred in navigable waters, federal maritime law, rather than state law, governs the resolution of this controversy. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 628, 79 S.Ct. 406, 408, 3 L.Ed.2d 550 (1959); *Pope & Talbot, Inc. v. Huron,* 346 U.S. 406, 410–11, 74 S.Ct. 202, 204, 98 L.Ed. 143 (1953).

■ For authority, appellants cite *The City of Panama,* 101 U.S. 453, 25 L.Ed. 1061 (1879) which stated:

Passengers must take the risk incident to the mode of travel they select, but those risks in the legal sense are only such as the utmost care, skill, and caution of the carrier, in the preparation and management of the means of conveyance, are unable to avert.

*Id.* 101 U.S. at 462.

The district court, however, applied the standard adopted by the Supreme Court in *Kermarec,* which held that

the owner of a ship in navigable waters owes to *all* who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case.

*Kermarec,* 358 U.S. at 632, 79 S.Ct. at 410 (footnote omitted) (emphasis added).

Appellants correctly point out that *The City of Panama* is not mentioned in *Kermarec,* much less expressly overruled, and that the *Kermarec* case involved the duty of the vessel's owners to a crew member's guest who was visiting while the vessel was in dock, and not the duty owed to a fare-paying passenger.

In addressing a similar incident, concerning a fare-paying passenger who fell "over a stool while 'exuberantly' dancing the 'Lindy' in the ship's discotheque," *Rainey v. Paquet Cruises, Inc.,* 709 F.2d 169, 170 (2d Cir.1983), the Second Circuit reasoned that:

We have stated on a number of occasions that an ocean carrier must exercise a very high degree of care for the safety of its passengers. Respected commentators long have contended, however, that

"[t]echnically the 'high degree' instruction is incorrect as a matter of principle...." "What is required," they say, "is merely the conduct of the reasonable man of ordinary prudence under the circumstances, and the greater danger, or the greater responsibility, is merely one of the circumstances, demanding only an increased amount of care." Prosser, *The Law of Torts* § 34 at 181 (4th ed. 1971); *See* 2 Harper & James, *The Law of Torts,* § 16.13 at 946 n. 13 (1956). In some instances, reasonable care under the circumstances may be a very high degree of care; in other instances, it may be something less.

\*    \*    \*    \*    \*    \*

There is no sound reason to require that a carrier exercise a high degree of care for those trifling dangers which a passenger meets "in the same way and to the same extent as he meets them daily in his home or in his office or on the street, and from which he easily and completely habitually protects himself." *Livingston v. Atlantic Coast Line R. Co.,* 28 F.2d 563, 566 (4th Cir.1928) (citing *Bassell v. Hines,* 269 F. 231, 232 (6th Cir.1920)).

\*    \*    \*    \*    \*    \*

In *McLean v. Triboro Coach Corp.,* 302 N.Y. 49, 51, 96 N.E.2d 83 (1950), Judge Fuld wrote that negligence generally is defined as the failure to use "the care which the law's reasonably prudent man should use under the circumstances of a particular case." "That being so", [sic] he wrote, "it may well be asked whether it is ever practicable for one to use more care than one reasonably can...." He suggested that the Court reexamine those decisions which hold that a carrier owes a "high", [sic] a "very high" or the "highest" degree of care in transporting its passengers. New York courts since have adopted what this Court has termed "the logical view" that there can be only one degree of care, *i.e.,* reasonable care under the circumstances.

*Id.* at 170–71 (citations omitted). Finally, in citing to *Kermarec,* it concluded

"the *Kermarec* rule of reasonable care under the circumstances is applicable in passenger cases. The extent to which the circumstances surrounding maritime

travel are different from those encountered in daily life and involve more danger to the passenger, will determine how high a degree of care is reasonable in each case."

*Id.* at 171.

The First, Fifth, and Eighth Circuits have adopted similar rules. *See Muratore v. M/Scotia Prince*, 845 F.2d 347, 353 (1st Cir.1988); *Gibboney v. Wright*, 517 F.2d 1054, 1059 (5th Cir.1975); *Tullis v. Fidelity and Casualty Co.*, 397 F.2d 22, 23–24 (5th Cir.1968); *Urian v. Milstead*, 473 F.2d 948, 951 (8th Cir.1973).

This court finds the reasoning in *Rainey* to be convincing and adopts its conclusion that the owner of a vessel in navigable waters owes to its fare-paying passengers the exercise of "reasonable care under the circumstances," and that the "extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to a passenger, will determine how high a degree of care is reasonable in each case."

Accordingly, this court finds no error in the trial court's instruction to the jury and its judgment on the verdict thereon is AFFIRMED.