Linda LYONS, Plaintiff,

v.

**MEMPHIS BOARD OF EDUCATION, Defendants.**

**No. 95–2886–V.**

United States District Court, W.D. Tennessee, Western Division.

Aug. 15, 1997.

Steve North, Madison, TN, Don Owens, III, Memphis, TN, for Plaintiff.

Ernest G. Kelly, Jr., Memphis, TN, for Defendant.

ORDER DENYING DEFENDANT'S MO-
TION FOR JUD(;MENT AS A MAT-
TER OF LAW, FOR NEW TRIAL,
AND FOR SUMMARY JUDGMENT
AND GRANTING REMITTITUR OF
BACK PAY AWARD

VESCOVO, United States Magistrate
Judge.

This employment discrimination case is before the court on the motion of the defendant, City of Memphis Board of Education ("the Board"), for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure and, in the alternative, for a new trial under Rule 59 on the issues of retaliation and back pay. In the event the court denies both judgment as matter of law and new trial, then plaintiff seeks summary judgment under Rule 56 on the issue of front pay. The parties have consented to trial, including entry of judgment, before the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). After review of the pleadings and the portion of the record provided by defendant, the court denies defendant's motion except as to the award of back pay for the reasons that follow.

## I. Procedural Background

Plaintiff Linda Lyons, a former teacher in the Memphis City Schools from October 1989 to May 1994, filed this lawsuit under Title VII, 42 U.S.C. §§ 2000e–2 and –3, alleging racial discrimination and retaliation. Plaintiff is a white female and the Memphis City Schools system is predominately black. Ms. Christine Johnson, the principal of Alcy Elementary where plaintiff taught, is black, the faculty is predominately black, the administrative staff is black, the Board is predominately black, and the school superintendent, Gerry House, is black. Plaintiff claims she was denied promotional opportunities, tenure, transfer, training, and was harassed and terminated because she was white and in retaliation for filing an EEOC complaint and charge. She seeks compensatory damages, back pay, front pay in lieu of reinstatement, attorney's fees and expenses, and interest.

The parties stipulated that (1) the issues of liability for both discrimination and retalia-

tion and the issues of back pay and compensatory damages would be submitted to the jury, and (2) if the jury found liability for either racial discrimination or retaliation, the issues of front pay, prejudgment interest and attorney's fees and expenses would be determined by the court.

A seven day jury trial was held in May, 1997. At the conclusion of plaintiff's proof, defendant moved for judgment as a matter of law. The motion was denied, and the trial proceeded. Again at the conclusion of defendant's proof and again at the close of all the evidence, defendant moved for judgment as a matter of law. The motion was granted in part and denied in part. The court found plaintiff had failed to present a prima facie case for denial of training, promotion, and transfer and entered a partial verdict on these issues. The court submitted the remaining issues to the jury as stipulated. After deliberation, the jury returned a mixed verdict. The jury found no racial discrimination, but did find in favor of the plaintiff on the issue of retaliation and awarded plaintiff back pay in the amount of $137,017 and compensatory damages in the amount of $1,000.

## II. Factual Background

In October, 1989, plaintiff was first employed as a teacher in the Memphis City School System and assigned to Alcy Elementary as a first grade teacher. Plaintiff had twenty years experience as a fifth grade teacher and was certified for elementary education. She had no first grade experience.

Untenured city school teachers are evaluated each year, usually in February, and then reevaluated in May if the February evaluation is unsatisfactory. The evaluation form consists of five sections of "instructional competencies and indicators." The teacher's performance is rated on a scale of 1 to 5 with 5 being the best score. Depending on the teacher's performance, the teacher may be recommended for "reelection," that is, rehire, and, if eligible, for tenure. A teacher must complete three years of service before being eligible for tenure. Tenure decisions are made annually by the Board at its April meeting. In order to be considered for ten-

ure by the Board at its April meeting, a recommendation for tenure must be received by the Board by April 1st.

Each year while plaintiff was employed by the Memphis City Schools, with the exception of her third year, plaintiff received one or more below average evaluations. On plaintiff's first yearly evaluation in February, 1990, Ms. Miller, a supervisor, gave plaintiff an overall unsatisfactory evaluation. In Category IV, "manages classroom activities effectively," Ms. Miller gave plaintiff a rating of 2 for "maintaining appropriate learner behavior," which was below the middle or acceptable standard. Plaintiff testified that she wasn't surprised by this evaluation because she was not trained for first grade and was having a difficult time. The year-end evaluation for her first year was likewise below an acceptable score, but plaintiff was recommended for reelection despite the evaluation.

Plaintiff fared no better on her evaluation during her second year of teaching, 1990–1991. Ms. Parker, another supervisor, gave her a less-than-satisfactory performance evaluation in February, 1991, as did Johnson. Neither Parker nor Johnson recommended plaintiff for reelection. The next month, April 1991, plaintiff attended an evaluation workshop which led to a satisfactory evaluation in May 1991 for her second year of teaching. Even on this evaluation, plaintiff's lowest scores were in Category IV on classroom management. Based on her satisfactory year-end evaluation, plaintiff was recommended for reelection at the end of her second year. She was not eligible for tenure that year.

For her third year of teaching, 1991–1992, plaintiff was assigned to the fifth grade, the grade she preferred. This year she received a satisfactory evaluation in February and was recommended for reelection. Because she received an acceptable evaluation in February, it was not necessary to reevaluate her at the end of the year. She believed she should have been considered for tenure at the end of her third year, but the Board determined she was not eligible.

During her fourth year of teaching, plaintiff was eligible for tenure. As usual, she was evaluated in February 1993. At that time, Johnson rated plaintiff's performance as satisfactory and recommended her for consideration for tenure by the Board in April. However, the following month, on March 25, 1993, plaintiff received a curt letter from Johnson dated March 22, 1993, addressing problems that plaintiff was experiencing in controlling her class as observed by Johnson in a classroom visit that day. (Ex. 14.) The letter described plaintiff screaming at the students to sit down and be quiet while the children were talking so loudly they could be heard down the hall. Being very upset by the memo, plaintiff complained to Shirley Graham, one of her supervisors at the time, about the memo. According to plaintiff's testimony, Ms. Graham observed that the memo was racially motivated and instructed plaintiff to take the matter up with Logan Mitchell, a director with the Board and Johnson's supervisor at the time. Plaintiff then contacted Logan Mitchell and complained to him about Johnson's allegedly racially motivated conduct.

On March 26, 1993, the same day as plaintiff's conversation with Logan Mitchell, Johnson reevaluated plaintiff and issued an unsatisfactory evaluation. Normally, the teacher being evaluated signs off on the evaluation to indicate that she has received and read the evaluation. In this instance, however, plaintiff was not shown the evaluation nor did she sign off on it. Instead, the evaluation was forwarded directly to the Board without plaintiff seeing it.

In the March 26, 1993 evaluation, Johnson gave plaintiff low marks in Category IV, classroom control. Plaintiff was also given a low rating for the criteria "maintains effective relations with students, teachers, and staff." Contrary to the February 1993 evaluation, the March 1993 evaluation did not recommend plaintiff for tenure. Because of this less than satisfactory evaluation in March, 1993, plaintiff was not considered for tenure by the board at its April 1993 meeting. In an attempt to explain the sudden about face on evaluations from February 2, 1993 to March 26, 1993, Johnson testified plaintiff's performance deteriorated rapidly during the six-week period which necessitat-

ed another evaluation immediately rather than at the end of the year as was customary.

On April 1, 1993, apparently to support the poor evaluation, Johnson presented plaintiff with classroom evaluations forms dating back to October 21, 1992, which generally criticized plaintiff's ability to control her class. At least one of these observations were made on a date plaintiff was absent. Furthermore, the forms appeared to be completed in the same ink even though Johnson testified that she does not routinely use one pen but instead uses whatever pen is available.

Following the denial of tenure in April, 1993, Johnson again reevaluated plaintiff at year end, in May, 1993. She reversed her position from March, found plaintiff's performance again to be satisfactory, recommended plaintiff for reelection as a teacher for the upcoming school year and also recommended plaintiff for tenure. By this time, however, it was too late for the Board to consider plaintiff for tenure for the current school year.

In August, 1993, plaintiff filed an EEOC complaint charging racial discrimination. The EEOC mailed a copy of the complaint to Ricks Mason, Director of Personnel for the Memphis City Schools. On behalf of the Board, James E. Foster, Coordinator of Personnel Services, submitted a response to the charge on September 14, 1993.

In the fall of 1993, plaintiff returned for her fifth year of teaching at Alcy Elementary only to find she had been reassigned to the first grade. No explanation for the reassignment from fifth to first was given. The first grade classrooms were located near the principal's office. Shortly after school recommenced, Johnson began conducting unannounced classroom observations in plaintiff's classroom. Plaintiff believed these visits were made merely to harass her. Johnson, on the other hand, testified that these visits were customary and necessary when a teacher was experiencing difficulty controlling her class.

Also, in the fall of 1993, Johnson refused to let plaintiff's husband come on school property to pick plaintiff up after school without first coming by the principal's office to sign a permission slip to be on school property. Johnson testified this was standard school policy. Plaintiff disagreed, testifying that no other spouses were required to follow this procedure and these restrictions were imposed on her husband as a form of harassment. In addition, according to plaintiff, Johnson accused plaintiff's husband of stealing school property. Plaintiff claims these accusations were also made to harass her.

Not surprisingly, on February 11, 1994, and again on June 1, 1994, Johnson gave plaintiff a poor performance rating and failed to recommend her for reelection and tenure. Consequently, plaintiff was discharged. Ms. Miller, a supervisor, also observed and evaluated plaintiff in 1994. Even though she did not prepare or have any written report to document her findings, Miller recalled from memory that plaintiff's performance that year was below par. Miller's primary criticism of plaintiff in 1994 concerned plaintiff's lesson plans. According to plaintiff, the other first grade teachers followed the same lesson plans but they were not criticized as she was.

After being discharged, plaintiff unsuccessfully sought employment with other school districts. Finally, she obtained a job as a desk clerk at a motel in Chattanooga, but, according to her testimony, she was forced to quit because of psychological and emotional problems she claims to have experienced as a result of her termination from the Memphis City Schools. Later, plaintiff was adjudged totally disabled and has not been employed since that time.

### III. Defendant's Contentions

In the present motion defendant first argues that there was insufficient evidence from which a reasonable jury could have concluded that defendant's asserted reason of terminating plaintiff for poor performance was merely a pretext for retaliation. Second, defendant contends that the back pay award was excessive and unsupported by the evidence in two aspects: (a) the jury failed to reduce the back pay by the amount of money plaintiff earned, $3,000, while employed as a hotel desk clerk, and (b) the jury's award of $1,000 compensatory damages demonstrates

that the jury did not believe plaintiff was disabled because of injuries resulting from defendant's allegedly discriminatory actions, and therefore the back pay award .in its entirety was improper. Third, in the same vein, defendant charges that since the jury's meager award of $1,000 in compensatory damages indicates a finding of no disability, plaintiff therefore is not entitled to any front pay and the issue of front pay should be summarily denied. Last, defendant asserts that the court erred in instructing the jury on the burden of proof the plaintiff bears in proving pretext.

In her response, plaintiff urges the court to uphold the jury verdict.

### IV. Standard for Judgment as a Matter of Law

■■■■] Rule 50(a) sets forth the standard for granting a motion for judgment as a matter of law. If "there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on [an] issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party." FED.. R.CIV.P. 50. In deciding whether to grant a motion for judgment as matter of law, the court "must view the evidence most favorably to the party against whom the motion is made." Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure–Civil 2d § 2524 (1994); *K & T Enterprises, Inc. v. Zurich Insurance Co.,* 97 F.3d 171, 175 (6th Cir.1996). The court must "give that party the benefit of all reasonable inferences that may be drawn from the evidence." *K & T Enterprises, Inc.,* 97 F.3d at 175. Another formulation of this standard states that sufficient evidence for submission to the jury will be found "unless, when viewed in the light of those inferences most favorable to the non-movant, there is either a complete absence of proof on the issues or no controverted issue of fact upon which a reasonable person could differ." *American and Foreign Insurance Company v. Bolt,* 106 F.3d 155, 157 (6th Cir.1997). Only where no reasonable juror could find for the nonmoving party is judgment as a matter of law appropriate. *Manzer v. Diamond Shamrock Chemicals Co.,* 29

F.3d 1078, 1081· (6th Cir.1994). Against this standard, the court will address defendant's arguments.·

### V. Analysis ·

#### A. Pretext

■■] In the present motion, defendant first argues that there was insufficient evidence from which a reasonable jury could have concluded that defendant's asserted reason of terminating plaintiff for poor performance was merely a pretext for retaliation.

Title VII makes it unlawful to retaliate against employees who have made a charge of employment discrimination. 42 U.S.C. § 2000e–3(a). At trial, plaintiff's proof of retaliation involved two charges of racial discrimination: (1) plaintiff's verbal complaint to Logan Mitchell on March 26, 1993 and (2) plaintiff's filing of an EEOC complaint in August, 1993. Plaintiff argues that the unprecedented March 26, 1993 poor ·evaluation was an act of retaliation by Johnson for the complaints or racial discrimination plaintiff made to Mitchell the same ·day. Plaintiff further argues that all the events in the 1993–1994 school year, i.e., the reassignment to first grade, the excessive classroom observations, the accusations of theft, the requirements to obtain·· a school pass imposed on plaintiff's husband, the low evaluations that year, and her eventual termination, were retaliatory acts motivated by the EEOC charge filed by plaintiff.

The court will begin its analysis with a review of the applicable burden of proof. In a retaliation case, the *McDonnell Douglas* and *Burdine* burden-shifting analysis applies. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Plaintiff has the burden initially of establishing a prima facie case of retaliatory discharge. *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir.1987). Plaintiff may prove a ·prima facie case by direct evidence of discriminatory intent or through circumstantial evidence. The effect of establishing a prima facie case is to create a presumption that the employer has unlawfully discriminated against the employee. *Burdine,* 450

U.S. at 254, 101 S.Ct. 1089; *Wixson v. Dowagiac Nursing Home,* 87 F.3d 164 (6th Cir. 1996). Once the plaintiff establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. The burden on defendant is one of production not persuasion. *Id.* at 253, 101 S.Ct. 1089. Here, the Board introduced evidence at trial of plaintiff's poor performance throughout her five years of teaching at Alcy Elementary. It is undisputed that plaintiff received low marks on her performance evaluations four out of the five years she taught at Alcy. Not only did Johnson give plaintiff low marks but Miller and Parker also did.

Once defendant meets his burden of production, the presumption of discrimination vanishes. *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. 1089; *Manzer,* 29 F.3d at 1082. The inference of discrimination shifts from a mandatory one the fact finder must draw to a permissive one the fact finder may draw, provided that the jury finds the employer's explanation unworthy of belief. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Manzer,* 29 F.3d at 1082; *Monette v. Electronic Data Systems Corporation,* 90 F.3d 1173, 1179. Thus, "once the employer has come forward with a nondiscriminatory reason for firing the plaintiff, ... the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer,* 29 F.3d at 1083.

Defendant does not contest the finding that plaintiff established a prima facie case. Instead, defendant argues that plaintiff failed to establish defendant's proffered reason for termination, poor performance, was pretextual.

■] The Sixth Circuit in *Manzer v. Diamond Shamrock,* 29 F.3d 1078 (6th Cir.1994) articulated three ways pretext can be shown:

> To make a submissible case on the credibility of his employer's explanation, the plaintiff is 'required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge.' *Id.* at 1084. The jury may not just reject defendant's proffered reason without a sufficient basis to do so. *Id.*

Defendant contends that plaintiff has relied on the second method of rebutting defendant's proffered reason which entails the use of indirect or circumstantial evidence to prove that an illegal motive more likely than not motivated defendant's conduct. *Manzer* holds that "in order to make this type of rebuttal showing, the plaintiff may not rely simply upon his prima facie evidence but must, instead, introduce additional evidence of age discrimination." *Manzer,* 29 F.3d at 1084. Defendant argues that plaintiff has not carried her burden by any of these methods, particularly the second method.

The record is clear that plaintiff had difficulty maintaining discipline and control over her pupils. At trial, evidence was presented that during the fall of 1992 and spring of 1993, plaintiff referred numerous students to Johnson for discipline. These referrals were all written and were introduced into evidence as Ex. 16. A referral to the principal is a last resort measure for disciplining a child short of suspension. Prior to referring a child to the principal, the teacher as a rule exhausts all other methods of discipline and so indicates on the referral form. Much of this proof was presented by plaintiff herself as part of her proof of racial discrimination but the court finds it equally probative of plaintiff's inability to maintain order in her classroom. Obviously, this is an excessive number of disciplinary referrals for any teacher in one semester. Indeed, the number of referrals is indicative of plaintiff's failure to control the classroom.

It is equally as clear that the ability to maintain a classroom environment conducive to learning has been determined to be a critical requirement of a Memphis City School teacher. In addition to Johnson, three other persons who performed independent evaluations of plaintiff over the years recognized problems plaintiff experienced in maintaining classroom control. Thus, the inability to maintain discipline in the class

would be a legitimate reason for terminating plaintiff.

Plaintiff relies on both direct evidence that defendant's proffered reason lacks a factual basis and circumstantial evidence to show defendant's stated reason for terminating her was pretextual and that the real reason for her termination were her complaints of racial discrimination to Logan Mitchell on March 26, 1993, and the filing of an EEOC charge in August, 1993. To understand plaintiff's direct and circumstantial evidence, it is necessary to review the sequence of events starting with the March 23, 1993 letter through plaintiff's discharge. Immediately after plaintiff's complaint to Mitchell, Johnson reevaluated plaintiff and gave her an unsatisfactory rating and recommended that plaintiff not receive tenure. Defendant contends the March 26, 1993 evaluation was not an act of retaliation but instead was merely a continuation of Johnson's dissatisfaction with plaintiff's poor performance.

The March 26, 1993 evaluation was preceded by a March 22, 1993 letter from Johnson entitled "Poor Classroom Performance." In the March 23, 1993 letter, Johnson strongly criticized plaintiff's performance after having found plaintiff's performance satisfactory the month before. The letter outlined a particular episode the previous day and concluded by describing a severe decline in plaintiff's performance since the good evaluation the month before. Plaintiff received the letter on March 25, 1993. That same day Johnson advised plaintiff that she was going to be reevaluated and asked plaintiff to complete a self-evaluation form. (TR. 28.) One day after receipt of the letter and being advised that she would be reevaluated, plaintiff made her first complaint of racial discrimination to Logan Mitchell. That same day, March 26, 1993, Johnson issued an unsatisfactory evaluation. Even though there was no direct evidence Logan Mitchell ever told Johnson about the complaint before Johnson reevaluated plaintiff, plaintiff contends the close timing of the two events alone is circumstantial evidence of retaliation.

It is obvious that by the low performance rating in March, 1993, Johnson intended to prevent plaintiff from being considered by the Board for tenure in April, 1993 ostensibly because of a recent incident observed by Johnson. Shortly before March, 1993, Johnson had been advised that plaintiff was on the tenure list. Johnson may be subject to criticism for her outright efforts to prevent plaintiff from receiving tenure, but unless her actions were motivated by retaliatory animus, they are not the basis for recovery in this lawsuit.[1] The timing sequence, as urged by plaintiff, would perhaps be sufficient to establish pretext if it were not for the fact Johnson had decided to reevaluate plaintiff before plaintiff met with Logan Mitchell. The evidence indicates Johnson had made the decision to reevaluate plaintiff before plaintiff visited Mitchell. Therefore, the court concludes that no reasonable juror could find that plaintiff's complaint of racial discriminatory conduct prompted Johnson to give plaintiff a low evaluation in the spring of 1993.

Plaintiff also urges that the Johnson's conduct in the 1993-4 school year after her filing of the EEOC charge and the ultimate decision to terminate plaintiff were motivated by retaliatory animus. As to these allegations, the defendant also contends that Johnson's actions were merely a continuation of her dissatisfaction with plaintiff's poor performance as a teacher. After carefully considering the proof, the court concludes the evidence was sufficient to permit a jury to disbelieve defendant's proffered reason.

During the summer preceding plaintiff's last year of employment, plaintiff filed an EEOC charge. Before school commenced in the fall but after the EEOC charge was filed, Johnson reassigned plaintiff from fifth to first grade for no articulated reason other than the fact the first grade rooms were closer to the principal's office than the fifth grade rooms. Johnson reassigned plaintiff despite her knowledge plaintiff preferred fifth grade and had received her best performance evaluations teaching fifth grade.

---

1. The jury determined her actions were not racially motivated, and the court must only consider if they were retaliatory.

Soon after class began, Johnson began making unannounced visits to plaintiff's classroom. Johnson attempted to explain these visits as being necessary to monitor plaintiff's performance because of control problems plaintiff was experiencing. Yet, there was no proof that plaintiff was experiencing control problems at the beginning of the year with a new class of students. Moreover, there was nothing to indicate plaintiff had classroom control problems at the end of the preceding year. Indeed, the opposite was true. At the end of the preceding year, Johnson apparently believed plaintiff's performance had sufficiently improved to the point she revised her evaluation and had recommended Ms. Johnson for reelection and tenure. Plaintiff testified that the number of unannounced visits were highly unusual and were made for the purpose of harassing her. Because of the lack of any evidence that plaintiff was having difficulty with this new class, a jury could reasonable reject defendant's proffered reason of poor performance as the basis for the visits and infer these visits were made to harass plaintiff because she had filed an EEOC charge.

Also, during the 1993-4 school year, Johnson accused plaintiff's husband of casing the school and accused plaintiff of trying to obtain information about the security system. Johnson also required plaintiff's husband to obtain a permit from the principal's office to come on to school grounds. According to plaintiff, no other spouses were required to seek permission. Plaintiff's testimony as to this matter was credible and unrebutted. Reviewing the evidence most favorable to plaintiff, a jury could infer Johnson's conduct was harassment and in retaliation for filing an EEOC complaint.

Plaintiff's evaluation in February, 1994, by Johnson was much worse than any previous evaluation. Johnson was the only person to submit a written evaluation of plaintiff that year. Pam McReynolds, the supervisor, did not do a written evaluation. She did a classroom observation in January, 1994, and applauded plaintiff on her lesson that day.

In sum, plaintiff presented sufficient evidence to discredit defendant's proffered reason for engaging in excessive unannounced classroom visits, for placing additional requirements on plaintiff's husband to come into the school, and for failing to recommend plaintiff for tenure and for reelection after finding her performance at the end of the preceding school year to be satisfactory.

 The ultimate burden of persuasion is always on the plaintiff to show intentional discrimination. *Hicks,* 509 U.S. at 507, 113 S.Ct. 2742; *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. The plaintiff does not discharge her burden of persuasion by convincing the jury that the defendant's proffered reasons are pretextual. *Manzer,* 29 F.3d at 1083. There must still be a determination of unlawful discrimination. *Hicks,* 509 U.S. at 511, 113 S.Ct. 2742; *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. Once plaintiff has proven pretext, the jury can "infer intentional discrimination from proof of the prima facie case coupled with a disbelief of the proffered reason for the employer's action, but such an inference is not required." *EEOC v. Yenkin–Majestic Paint Corp.,* 112 F.3d 831, 835 (6th Cir.1997) (citing *Manzer,* 29 F.3d at 1083). The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. *Hicks,* 509 U.S. at 511, 113 S.Ct. 2742; *Manzer,* 29 F.3d at 1083.

The court concludes that the evidence of Johnson's flip-flopping evaluations of plaintiff, excessive classroom visits, reassignment of plaintiff and other conduct was sufficient to challenge the credibility of defendant's proffered explanations and to allow the jury to infer retaliation. Furthermore, the court concludes the verdict of retaliation was not against the weight of the evidence.

### B. Back pay

] The court will now address the implications of the $1,000 compensatory damage award on the issue of back pay. Defendant argues that $1,000 is a nominal amount indicative of a finding by the jury that plaintiff was not injured as a result of any action by defendant, and therefore since defendant did

not cause injuries to plaintiff which would prevent her from working, then defendant should not be liable for any wages for the period of time plaintiff has been unemployed since being terminated by the Board.

The court disagrees. Although the amount of compensatory damages is small, the court cannot conclude by the amount alone that the jury decided defendant did not cause injuries to plaintiff which prevented her from working. The jury may have reasoned that emotional injuries plaintiff sustained were enough to prevent her from earning any wages, but that other than being unable to work, plaintiff's suffering was minimal. Thus, the jury may have believed that back pay plus a nominal monetary award was sufficient to compensate plaintiff for any damages she sustained. The fact that the jury awarded plaintiff some compensatory damages, no matter what the amount, demonstrates the jury's finding that the plaintiff did sustain emotional injuries as a result of her termination from the Memphis City Schools.

■ Next the court will consider whether back pay was excessive for failure of the jury to deduct the $3,000 wages plaintiff earned as a motel clerk. The duty to mitigate damages after discrimination is imposed by statute. 42 U.S.C. § 2000e–5(g); *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 623 (6th Cir.1983). The statute provides, in pertinent part: "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e–5(g). The jury was instructed to "deduct the total amount the plaintiff has actually received ... in wages" from the back pay damages.

Plaintiff earned $3,000 while employed as a desk clerk at a hotel after she was not rehired by the Board. The parties stipulated that the amount of back pay allowable through the date of trial, including benefits, was $137,017. The jury returned a verdict for $137,017 and failed to reduce the back pay allowable to plaintiff by the $3,000 as required by statute. Thus, the award of back pay is excessive by $3,000. According-

ly, defendant's motion for judgment as a matter of law on this issue is granted. The court orders the award of back pay reduced to $134,017.

*C. Jury Instructions*

■] Next, the court considers defendant's challenge to the jury instructions given. Relying on the following language from *Manzer*, defendant contends that the court should have instructed the jury that circumstantial evidence of pretext "must overwhelm" defendant's articulated non-discriminatory reason for its conduct:

> Therefore, the sufficiency of Manzer's rebuttal must be evaluated in terms of the second showing discussed above, i.e. that the strength of his circumstantial evidence of age discrimination overwhelms, or at least would permit a reasonable juror to conclude that it overwhelms, Diamond Shamrock's non-discriminatory reasons.

*Manzer v. Diamond Shamrock*, 29 F.3d 1078, 1084 (6th Cir.1994).

Before considering this issue on the merits, the court notes that defendant raises this ground in his motion but fails to address it or brief it in the accompanying memorandum. Similarly, plaintiff fails to mention it at all in her responsive pleadings. Nevertheless, the court will consider the issue to the extent possible with the information before it at this time.

■ In reviewing objections to jury instructions, the court must consider the instructions as a whole. *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72–73 (6th Cir.1990). A new trial should only be granted if "the instructions, viewed as a whole, were confusing, misleading or prejudicial." *Id.*

Here, the court finds the instructions as given correctly stated the law. As to plaintiff's retaliation claim, the court instructed the jury,

> If you find that defendant has sufficiently stated a legitimate, nondiscriminatory reason or reasons for its action, then plaintiff must prove by a preponderance of the evidence that defendant's stated reasons

are not the true reasons for its actions, but are a pretext, or cover-up, for retaliation against plaintiff for having engaged in a protected activity. If you are not persuaded that defendant's stated reasons were pretextual for retaliation, then you must return a verdict for defendant on the retaliation claim. If, on the other hand, you find that defendant's stated reasons were pretextual and that defendant has intentionally retaliated against plaintiff, then you must so indicate on the verdict form.

This instruction was taken primarily from plaintiff's proposed instructions, with certain modifications, and from Devitt, Blackmar, and Wolff, *Federal Jury Practice and Instructions: Civil*, § 104 (1984 & 1997 pocket part), and American Bar Association, Section of Litigation, *Model Jury Instructions, Employment Litigation*, § 1.02[3][a] & [b] (1994). Defendant submitted no requested instructions on plaintiff's retaliation claim. Nor has defendant provided any evidence to the court that it duly noted an objection to the instruction on retaliation.

The jury was instructed that plaintiff had the burden of proving the defendant's proffered legitimate, nondiscriminatory reason for its conduct was a pretext. The jury was also instructed that plaintiff had the burden of proving pretext by a preponderance of the evidence. *Manzer* clearly holds that in order to "make a submissible case on the credibility of his employer's explanation, the plaintiff is required to show by a *preponderance of the evidence*" that the proffered reasons were pretextual. *Manzer*, 29 F.3d at 1083 (emphasis added). Thus, the court holds the instruction was not erroneous and adequately stated the law. Moreover, after evaluating the proof, the court finds that a reasonable juror could have concluded that the circumstantial evidence overwhelms the Board's stated reason for its conduct. (See discussion *supra* at 743.)

Accordingly, the court holds the jury instructions were not erroneous.

### D. Front pay

As for the defendant's final argument, the court concludes that summary judgment on the issue of front pay is inappropriate for the same reasons the court found the nominal amount of compensatory damages did not preclude an award of back pay.

### V. Conclusion

For the reasons stated above, defendant's motion for judgment as a matter of law, for new trial, and for summary judgment are denied with one exception: the award of back pay will be reduced to $134,017. Otherwise, the jury verdict will be allowed to stand.

The remaining issues to be decided by the court are front pay, attorney's fees and expenses, and interest. A non-jury trial will be held on these issues on Thursday, November 6, 1997, at 9:30 a.m. in 947 Federal Building, 167 North Main Street, Memphis, Tennessee, with a pretrial conference on Thursday, October 23, 1997, at 3:00 p.m. Counsel are to present a joint pretrial order on or before Thursday, October 16, with proposed findings of fact and conclusions of law.

IT IS SO ORDERED.