**Cornelius TOOSON, Plaintiff–Appellant,**

v.

**ROADWAY EXPRESS, INC.; Mike Wickum; Tom Brown; and Brian Clinkenbeard, Defendants–Appellees.**

**No. 00–4440.**

United States Court of Appeals, Sixth Circuit.

Sept. 25, 2002.

Before NELSON, BOGGS, and NORRIS, Circuit Judges.

PER CURIAM.

Cornelius Tooson appeals the order of the district court granting judgment to his former employer, Roadway Express, Inc.,

and several of its managers (collectively, "Roadway"). Tooson's action for racial discrimination was heard by a jury, and the jury found for Roadway. Tooson argues that the district court erred in issuing several specific jury instructions and in making several evidentiary rulings and that such errors require that the jury's verdict be reversed. For the following reasons, we affirm the district court's judgment pursuant to the jury's verdict in favor of Roadway.

## I

Tooson, a black male, began working as a truck driver for Roadway in 1973. Between 1973 and 1994, Tooson's tenure with Roadway was relatively uneventful. In 1994, Tom Brown became the relay manager of Roadway's Cincinnati office, from which Tooson was dispatched, and the events that form the basis of Tooson's action began. Tooson was disciplined for several motorist complaints, which, Tooson contends, are unremarkable occurrences and had never before been the grounds for disciplinary action. In March 1994, Tooson was informally reprimanded for falsifying his time and mileage logs.

Subsequently, Tooson's driving was the subject of several more motorist complaints. Roadway pursued the complaints, requesting written descriptions of Tooson's driving from the motorists. Tooson was discharged in January 1996. The Ohio Joint State Committee ("OJSC"), a panel comprised of equal numbers of management and union officials designated to hear grievances under Roadway's collective bargaining agreement, reversed the discharge and recommended that Tooson be given remedial training.

After the training, in June 1996, Tooson was issued a speeding citation for traveling 70 in a 55 MPH zone, although the officer testified that he was actually traveling at 80. Tooson was again fired and reinstated by the OJSC. Roadway after additional warnings for speeding in 1997, had Tooson followed and videotaped. The videotape apparently revealed several driving infractions, and Tooson was fired in January 1998. The OJSC reduced this punishment to a final warning. Finally, a November 1998 videotape revealed several safety violations, almost one for every 1½ miles, according to Roadway officials. Tooson was discharged again in November 1998 and has not been reinstated.

On July 11, 1997, Tooson filed this action against Roadway and several of its officials claiming that the increased surveillance, reprimands, and the 1996 terminations that were later reversed by the OJSC were adverse employment actions motivated by racially discriminatory animus in violation of Title VII, 42 U.S.C. § 1983 (despite the absence of a state actor), and Ohio law. After Tooson was finally discharged in November 1998, Tooson amended his complaint, alleging that the discharge was also motivated by discriminatory animus and constituted illegal retaliation for his lawsuit.

The district court conducted a jury trial on Tooson's claims in October 2000. On October 18, 2000, the jury returned a verdict for the defendant on all matters, and Tooson now appeals.

## II

Tooson contends that the district court erred in issuing to the jury instructions and in making several evidentiary rulings during the trial. Having reviewed all of his arguments, we consider his five most substantial assignments of error separately below.

### A. Race as "Determining Factor" Instruction

■ Tooson argues that the district court erred by instructing the jury that, in

order to find Roadway liable, race must have been a "determining factor," rather than only a "motivating factor," in Roadway's decision to discipline or discharge the plaintiff. Tooson objected to the use of "determining factor" in the jury instructions, explaining to the court that the statute actually uses the term "motivating factor." The district court issued the following instruction to the jury:

> The plaintiff has the burden of proving by a preponderance of the evidence that plaintiff's race was a *determining factor in the defendant's decision to discipline or discharge plaintiff. . . .* A determining factor is one that caused the reaching of a decision. Plaintiff need not show that race or retaliation was the sole or exclusive factor in the defendants' decision to discipline or discharge him. . . . [T]here may have been more than one factor that motivated defendants. Plaintiff must prove by a preponderance of the legal evidence, however, that one such factor was race and/or retaliation and that factor *made a difference* in the determination of his discipline or discharge.

JA at 265–67 (emphasis added).

The word "determining factor" is not the precise term used in Title VII, at least as amended by the Civil Rights Act of 1991. In order to establish his case under the language of the statute, the plaintiff must show that race was a "motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e–2(m). If the plaintiff establishes that race was a motivating factor in the adverse employment decision, then the burden shifts to the defendant to show by a preponderance of the evidence that it would have taken the employment action notwithstanding the plaintiff's race. *See, e.g., Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 925

(6th Cir.1999). Even if the defendant satisfies this shifted burden, the plaintiff may recover attorneys' fees and seek other injunctive relief. 42 U.S.C. § 2000e–5(g)(B)(1).

Tooson contends that the "determining factor" language establishes a more demanding burden than the "motivating factor" language. By requiring proof that race was a "determining factor," the district court, according to Tooson, demanded that Tooson prove that race actually "caused" the adverse employment action, conflating the defendant's subsequent burden and the plaintiff's initial burden. In support of his argument, Tooson turns to the dictionary, noting that "to motivate" is defined as "to impel, to provide with a motive," while "to determine" as "to bring about a result." Tooson also notes that the Second Circuit had decided that a district court erred by instructing the jury that the plaintiff was required to show that race was "*the* determin*ative* factor" in the employment action. *See Ostrowski v. Atlantic Mutual Ins. Co.*, 968 F.2d 171 (2d Cir.1992) (emphasis added).

Any risk that using "determining," as opposed to the precise word in the statute, prejudicially raised the plaintiff's burden of proof was cured by the district court's careful definition of "determining factor" in its instruction to the jury. The court made clear that the plaintiff's race need not have been the exclusive factor in the decision, it need only have "made a difference." This definition is correct. If the plaintiff's race "made no difference" in Roadway's decision, then the plaintiff cannot prevail. Although it would be better practice for the trial court to use the statutory term, we think that the "motivating factor" language of the statute requires at least as much proof as the district court's specification of "determining factor." Viewing the instruction "as a whole," as we

are required to do, *Beard v. Norwegian Caribbean Lines,* 900 F.2d 71, 72–73 (6th Cir.1990), we cannot find that Tooson was prejudiced by the instruction.

## B. Direct Evidence Instruction

Tooson next argues that the district court erred by instructing the jury that it could find discriminatory intent only through the consideration of circumstantial evidence: that is, by finding similarly situated non-protected employees were treated better than Tooson. This suggestion, according to Tooson, undermined the legitimate probative value of a discriminatory comment allegedly made by Brown that he wanted "to fire that nigger, Tooson." This dampening effect occurred because the instruction suggested that discrimination could not be proven by direct evidence.

■ We cannot find a sense in which the district court restricted adequate proof of discriminatory intent to circumstantial evidence. Tooson specifically complains about one sentence in the district court's instructions to the jury: "Plaintiff may prove [discrimination] by proving by a preponderance of the legal evidence that defendants have treated similarly-situated non-black employees differently in the discipline or termination process." Tooson objected to the instruction, claiming that it would give the jury the impression that disparate treatment was the only way to prove discrimination.

The district court correctly overruled Tooson's objection. On the instruction's face, the court did not tell the jury that circumstantial evidence was the *only* way to prove discrimination. The court simply stated that the district court "*may*" prove discrimination through showing that a similarly situated, non-black employee was treated better. That is a correct statement of the law.

■ Tooson also contends that the proposition—that he had been disparately treated by Roadway—was settled when he established his *prima facie* case, avoiding summary judgment. Placing the issue before the jury again after its conclusive resolution was prejudicially confusing for the jury, according to Tooson. We disagree. The denial of summary judgment only established that there was a genuine issue of material fact as to whether another, non-protected but similarly situated, employee was treated more favorably. At trial, it is still up to the plaintiff to prove discrimination by a preponderance of the evidence, a goal that may be achieved through circumstantial evidence.

Most importantly, the district court later explicitly instructed the jury that discriminatory intent may be proved through discriminatory statements by Roadway employees: "Discriminatory remarks by certain employees of defendant may be considered as legal evidence as to whether the defendant acted in the discriminatory manner." Tooson does not suggest that he offered any direct evidence of discriminatory intent other than the comment. The district court did not foreclose, but instead affirmatively confirmed, the direct evidence path to proving discrimination.

## C. Instructions on "Vague" Statements and "Stray" Remarks

Tooson next contends that the district court erred by instructing the jury that it must determine whether any allegedly discriminatory comments were too "vague, ambiguous, and isolated to support an inference of discrimination or whether the statements, if any, reflect the biases and discriminatory intent of the decision-maker." Tooson does not contend that this feature of the instruction is an incorrect statement of the law (as well he should not, *see, e.g., Peters v. Lincoln Elec. Co.,*

285 F.3d 456, 477 (6th Cir.2002)), but only that the statements that he offered into evidence were not even arguably vague, ambiguous, or isolated. If that is true, the jury should have had no difficulty is satisfying itself that the statements were not too ambiguous. We can find no error with the instruction in this regard.

■ More specifically, Tooson argues that the district court erred by instructing the jury that it not consider any "stray comments," not made by decision makers at Roadway. The court instructed the jury as follows:

> "You are not to consider in your deliberations any remarks, comments, or characterizations of plaintiff or plaintiff's employment with Roadway Express, Inc. unless plaintiff has shown by a preponderance of the legal evidence that the remarks, comments, or characterizations were made by an employee of Roadway Express, Inc. who had decision-making authority and that the remarks, comments, or characterizations were related to defendants' decision to discipline or discharge the plaintiff.

> Unless or until you find that plaintiff has shown this, *you are not to consider any stray remarks, comments, or characterizations in your deliberations.* Remarks, if any, made by those who played a meaningful role in the decision to discipline or discharge plaintiff, however, are relevant.

JA at 268–69 (emphasis added).

In the context of this instruction, "stray remarks" clearly refers to those comments that are not made by decisionmakers at Roadway. The district court is correct that those remarks should not be considered. *See, e.g., Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 355 (6th Cir.1998). Tooson contends that the Supreme Court held in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), that "stray remarks" can be considered as evidence of discrimination. We, however, can find no support in *Hopkins* for the proposition that the remarks of individuals without any decisionmaking authority over the plaintiff can provide evidence of discriminatory intent. *Id.* at 251 (holding that comments, which were considered by personnel board in normal course of considering employment action, were relevant to establish discriminatory intent and were not just "stray remarks"). Tooson also argues that Brown was so clearly a decisionmaker that the instruction simply confused the jury. We can find no motion by Tooson to instruct the jury on this factual point, based on its having been conclusively established. The jury is required to find that the statement was that of a decisionmaker in order to consider it as evidence of discriminatory intent. The instruction was valid.

### D. The Live Testimony of Complaining Motorists

■ Tooson next argues that the district court erred by permitting the live testimony of motorists, on whose letters describing Tooson's driving Roadway relied in making its termination decision. To this court, Tooson argues that the prejudicial effect of the motorists' testimony outweighed any probative value. The only thing that Roadway officials had for their review was the letters of the motorists to consider, not their live testimony. Tooson's argument appears to be that only the letters, but not any explanatory testimony, should have been submitted to the jury because the testimony could not have been considered by Roadway officials in terminating Tooson.

We agree that the live testimony is not particularly relevant as to the actual factors relied upon by Roadway in terminating Tooson's employment. On the other

hand, Tooson identifies no information that the witnesses presented in direct examination that was not contained in their letters to Roadway. Moreover, Roadway may in fact have spoken to the motorists in the process of soliciting the letters for Tooson's file. At the very least, the testimony, insofar as it indicates that Tooson actually is a dangerous driver, is probative of the fact that the motorist letters were not manufactured shams to provide a pretext for firing Tooson. We can find no error in the admission of the motorists' testimony.

### E. Admission of Testimony Regarding the Consequences of Tooson's Driving Errors

■ Tooson argues that the district court erred in admitting inflammatory evidence from the testimony of motorists and Roadway officials regarding the dangers of Tooson's driving errors. According to Tooson, various testimony about the impact on a passenger automobile if it had to brake suddenly while Tooson was tailgating or the dangers of driving on the shoulder unnecessarily scared the jury and was irrelevant. Tooson also contends that comments in closing arguments by Roadway's counsel were excessively inflammatory.

We disagree. The objective importance of Roadway's claimed reasons for firing Tooson is probative of whether Roadway actually relied on those reasons.

### III

For all of the foregoing reasons, we AFFIRM the district court's judgment for Roadway.